## APPEAL OF RISHELL PHONOGRAPH CO.

Docket No. 153.   Submitted January 27, 1925.   Decided June 30, 1925.

In the circumstances, *held,* that the corporations involved were not affiliated in the years 1919 and 1920.

*N. C. Chambers, Esq.,* and *E. C. Anderson, Esq.,* for the taxpayer.
*Robert A. Littleton, Esq.,* for the Commissioner.

Before Ivins, Korner, and Marquette.

This appeal involves deficiencies in income and profits taxes for 1918 and 1919, in the respective sums of $7,444.61 and $8,410.42, determined by the Commissioner upon his disallowance of the taxpayer's claim that it should be deemed affiliated with the J. K. Rishel Furniture Co. The only question at issue is whether the two corporations are affiliated. From the pleadings, a stipulation of facts and testimony adduced at the hearing, the Board makes the following

FINDINGS OF FACT.

The Rishell Phonograph Co. (hereinafter referred to as the phonograph company or the taxpayer) and the J. K. Rishel Furniture Co. are both Pennsylvania corporations with principal offices at Williamsport, Pa. These corporations filed separate income and profits tax returns for 1918 and 1919, under dates of March 14, 1919, and March 12, 1920, respectively. Subsequently, in August, 1923, consolidated amended returns were filed for the two corporations for both such years.

The furniture company, prior to 1916, was engaged in the business of manufacturing dining-room and bedroom furniture and phonograph cabinets. It received large orders for phonograph cabinets from the leading manufacturers of phonographs and installed a large amount of special machinery for the purpose of making such cabinets. Thereafter it failed to receive further orders from the same customers, and in order to have a use for such machinery it decided to produce phonographs itself. It caused the phonograph company to be organized in 1916 for the purpose of selling the phonographs which it should manufacture. The reason for organizing a separate corporation was to limit liability in case of litigation for the infringement of phonograph patents. The officers of both corporations were at all times identical. During the tax years in question the furniture company had seven directors and the phonograph company had three. J. K. Rishel was president and director of both companies; Ralph T. Smith was secretary-treasurer and a director of both companies; B. H. Hammer was superintendent of both companies, a stockholder in both companies, and a director of the phonograph company. The stock in the two corporations during the years in question was held as follows:

| Stockholder. | Furniture Co. | Phonograph Co. |
|---|---|---|
| | *Per cent.* | *Per cent.* |
| J. K. Rishel | 43.04 | 47.00 |
| Ralph T. Smith | 16.79 | 23.00 |
| B. H. Hammer | 1.74 | 5.00 |
| Minority stockholders | 38.43 | |
| Rishel Furniture Co | | 25.00 |
| Total | 100.00 | 100.00 |

The phonograph company had no separate place of business, no equipment, no stock in trade. It solicited orders from retail stores for phonographs and those orders were filled by deliveries from the phonographs in the inventory of the furniture company. The furniture company billed the phonograph company monthly for phonographs delivered on its account, and credited it with phonographs returned by dissatisfied purchasers. The price at which the furniture company billed the phonograph company was arrived at by adding 15 per cent to an amount denominated " cost," though this amount did not include any apportionment of the charge for depreciation of fixed assets of the furniture company, which amounted to some $20,000 per annum. The furniture company's regular practice in dealing with others than the phonograph company was to fix a price by adding from 25 per cent to 35 per cent to cost.

The furniture company charged the phonograph company that proportion of office salaries of the furniture company which the sales of the phonograph company bore to the sales of the two companies, but no charge was made against the phonograph company for any other item of overhead.

The effect of these practices was to throw an undue proportion of the combined earnings of the two companies into the profits of the phonograph company. The corporations kept separate books and separate bank accounts.

#### DECISION.

The determination of the Commissioner is approved.

#### OPINION.

IVINS: It is obvious that the two corporations constituted a single economic unit with an arbitrary assignment of profits to the phonograph company, which in fact employed no capital and was practically nothing but an order-soliciting department of the furniture company. But this alone is not necessarily sufficient to bring the

corporations within the provisions of section 240 (b) of the Revenue Act of 1918, under which corporations are deemed affiliated:

(1) If one corporation · owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

The statute contains three elements which are not free from doubt. It is impossible to define exactly what is meant by *controls;* no general rule can be made that will fix the percentage necessary to constitute *substantially* all the stock of a corporation; and the word *interests* is a term susceptible of several interpretations.

It would be dangerous to attempt to make a strict definition of any one of these doubtful terms to be applied in every case, for the same reasons that have caused the courts to avoid attempting to define *due process of law.* If a strict and generally applicable definition were practicable, it probably would have been furnished by Congress. The very use of elastic terms indicates an intent to have them construed flexibly in the light of the peculiar circumstances of each particular case.

We have held that *control,* in the statute, is not necessarily limited to strict legal control, such as might be enforced by ordinary legal process. *Appeal of Isse Koch & Co.,* 1 B. T. A. 624. But circumstances which might indicate control in one case would not necessarily constitute it in another where other circumstances, involving other elements, were at variance.

" Substantially all " has been recognized by the Commissioner's regulations (Reg. 45, art. 633) as an elastic term which " can not be interpreted as meaning any particular percentage, but must be construed according to the facts of the particular case." The Commissioner has held that 95 per cent will be regarded as *prima facie* but not conclusively constituting *substantially all* of the stock of a corporation. The extent of the stock necessary to constitute *substantially all* may well vary according to the degree of control exercised.

*Interest* is a word for which the dictionaries give many definitions. In its objective sense, an *interest* in property is ordinarily held to mean a legal right of some kind. In certain applications the word means advantage, as when we say, " It is to his interest to do a certain thing "; in others, it may indicate merely desire or excitement of feeling, as when one claims to have an interest in the outcome of an election. It its subjective sense *interest* is susceptible of both narrow and broad meanings, an example of the latter being when it is used as a collective name for all those carrying on a particular kind of business—e. g., " the coal interests." When Con-

gress said "controlled by the same *interests*," we believe it meant something broader than *persons* or *individuals*. If "the same interests" was intended to mean only "the same persons," it would have been easy for Congress, by using the latter term, to have avoided all ambiguity. When two persons are guided in their action by a common interest (in the objective sense), they frequently constitute a single interest (in the subjective sense). If two individuals hold all the stock in two corporations, but in different proportions, their respective interests may be divergent or identical—it may be to the advantage of each to have the businesses so managed that a larger proportion of the profits will be attributed to the corporation in which he holds the most stock; or, on the other hand, it may be that the proportionate distribution is subordinated, in computing the advantage of one, to the desirability of increasing the combined profits of both companies where that can only be accomplished by attributing a larger proportion of the profits to the corporation in which his holdings are smaller.

In the case at bar three men holding directly 61.57 per cent of the stock of the furniture company held directly 75 per cent of the stock of the phonograph company. Indirectly, through the holdings of the former company in the latter, they owned an additional 15.39 per cent of the stock of the phonograph company and through their majority control of the furniture company they were in a position to vote all of the stock of the phonograph company. Their respective proportionate holdings in the two companies varied somewhat. Whether or not this variation is sufficient to justify the conclusion that their stock in the two corporations was controlled by the *same interests* is a question into which it is not necessary for us to go, for the reason that we are not convinced that they can be said to control *substantially all* the stock of both companies. That they controlled substantially all the stock of the phonograph company may be conceded for the purpose of argument, but we are not satisfied that in controlling 61.57 per cent of the stock of the furniture company they controlled *substantially all* of such stock. Much was stated in argument to the effect that the minority stockholders of the furniture company were friends and relatives of the majority stockholders, and that their stock was therefore controlled by the majority stockholders. But there is no real evidence in the record demonstrating any such control. The mere fact of relationship by blood or affinity does not of itself constitute proof of control, and the same may be said of friendship. To our minds 61.57 per cent of the stock of the phonograph company can not, in the light of all the circumstances of this case, be held to constitute substantially all of the stock, whether or not such a percentage in other circum-

stances might be held to be substantially all. The claim of the taxpayer for affiliation with the J. K. Rishel Furniture Co. must be rejected and the determination of the Commissioner approved.