37 C.C.P.A. (Patents)

### Application of FIELD.

Patent Appeals No. 5877.

United States Court of Customs and Patent Appeals.

June 26, 1951.

Miles D. Pillars, Washington, D. C. (Edward G. Curtis, Harold L. Stults, Robert D. Spille, and Curtis, Morris & Safford, New York City, of counsel), for appellant.

E. L. Reynolds, Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JACKSON, Judge.

This is an appeal from a decision of the Commissioner of Patents denying an application by appellant for an extension of time in the life of Letters Patent No. 2,005,733, issued to Flakice Corporation of Delaware

July 25, 1935. The application was made pursuant to Public Law 598, 81st Congress, 2nd Session, 35 U.S.C.A. § 115 et seq. The pertinent portions of that law read as follows:

"Sec. 1. That any person who served honorably in the military or naval forces of the United States at any time between December 7, 1941, and September 2, 1945—

"(a) who is the inventor or discoverer of an invention or discovery for which a patent was granted to him prior to September 2, 1945, the original term of which had not expired prior to said date and which is still owned by him, or who was prior to said date and continuously thereafter the sole owner of a patent for an invention or discovery which had not expired prior to said date; and

"(b) who, between December 7, 1941, and the date of the termination of his service but not later than the date of enactment of this Act, was not receiving income from said patent or patented invention or discovery; or whose income therefrom was substantially reduced as a result of his said service or because of the war, may obtain an extension of his patent for the term specified herein, upon application to the Commissioner of Patents within one year after the enactment of this Act and upon complying with the provisions of this Act. The period of extension of such patent shall be a further term from the expiration of the original term thereof equaling twice the length of the portion of his said service between the dates of December 7, 1941, and September 2, 1945, during which his patent was in force.

\*      \*      \*      \*      \*      \*

"Sec. 3. On the filing of such application the Commissioner of Patents shall cause an examination thereof to be made and, if on such examination it shall appear that such application conforms, or by amendment or supplement is made to conform, to the requirements of this Act, the Commissioner shall cause notice of such application to be published at least once in the Official Gazette."

Appellant is the inventor of the apparatus shown in the involved patent which relates to an ice-making machine and is entitled "Improvement in Heat Exchange Apparatus."

None of the facts in the case are in dispute. It appears that the application for the involved patent was filed by appellant, but prior to its issuance he had unconditionally assigned his entire interest to Flakice Corporation of New Jersey, which in turn assigned it to a similarly named corporation of Delaware.

Appellant is the owner of about 79 percent of the corporate stock of the Flakice Corporation of Delaware and a part of the remaining stock is owned by his relatives.

The Commissioner of Patents held that because the patent was not granted to him, and because it is not "still owned by him," appellant does not qualify under Section 1(a) of the involved Public Law and, therefore, refused to grant the sought-for extension.

The sole question presented here is the scope of Public Law 598.

The patent is one of several, all relating to various phases of ice-making machinery and equipment of which appellant is the inventor, and all of which are assigned to the Flakice Corporation.

It is contended by counsel that appellant, as the "dominant and sole" moving force in what counsel state is appellant's "personal corporation," is still the owner of the patent under the terms and purposes of Public Law 598.

It is argued that the interpretation placed on the involved Public Law by the Commissioner of Patents is restrictive and that it should be so interpreted as to afford relief to an inventor in the position of appellant.

It is urged by counsel for appellant that the terminology of the involved statute draws a clear distinction between two classes of veterans intended to be benefited by the extension of their patents. That is a proper statement, for, as may be observed, the veteran of the first class is an inventor or discoverer of an invention or discovery *for which a patent was granted to him,* while the veteran of the other class need not be an inventor, but who is the *sole owner of a patent.* It is contended

that appellant is one of the first class in that he is both a veteran and an inventor.

It is vigorously argued by counsel for appellant in their brief that the expression "still owned" does not permit an interpretation which would make it equal to the term "solely owned"; that the second group excludes inventors and therefore has a lesser form of ownership than the first group; and, that since such kind of ownership would be sufficient for those veterans who were not inventors, it must have been intended by Congress that those in the situation of appellant are entitled to the relief claimed herein. In support of that argument the World War I Patent Extension Act of 1928, 35 U.S.C.A. § 40a, has been cited. That act provided for an extension of patents to veterans and contained the words "held, by ownership or contract, a right in said invention or under said patent or to income by way of royalty or otherwise therefrom, whereby an extension of the term of said patent would benefit him." Counsel for appellant endeavor to interpret the involved act in the light of the Patent Extension Act of 1928. They quote from Senate Report No. 1190 having to do with the present act, for the purpose of showing that it was the intention of Congress to apply the benefits resulting from the present act to those veterans situated as is appellant. Counsel quoted from the Report the following language: "The act of May 31, 1928 (35 U.S.C.A. §§ 40a–40d), provided similar patent extension privileges to veterans of World War I. *The reported bill is similar in essential respects to the earlier law.* The bill calls for no additional appropriations, and in some measure makes restitution for the sacrifices of wartime service." (Italics quoted.)

We believe that the present act is similar in respect to the earlier act in that it was intended to relieve veterans who suffered financial detriment by reason of their service in the armed forces. However, we cannot agree with the contention of counsel that Public Law 598 should be interpreted so as to coincide with the Congressional intention in the 1928 act. In our opinion, if the intention of Congress was, in the later act, to provide relief in accordance with the provisions of the earlier act, it would have set it out in appropriate language.

There can be no doubt that the statute is remedial in its nature and if ambiguous it should be construed so as to favor those intended to be benefited.

It is elementary, as has been stated many times by this and other courts, that where there is no doubt as to the meaning of terms, there is no necessity for construction where there is nothing of uncertainty or obscurity upon which ambiguity could be predicated. United States v. Singer Manufacturing Co., 37 C.C.P.A., Customs, 104, C.A.D. 427.

In our opinion, there is no necessity for construction of the involved statute. Its meaning is clear in all respects. Furthermore, in our opinion, the Congress passed what it wanted to pass and the law was formally reduced by it to writing. It is not for us to attempt to reconstruct the law from Congressional history. However, a reference to the legislative history of the involved act does not support the contention of counsel for appellant.

It is clear from an examination of the patent itself and the assignment records in the Patent Office that the patent was *granted to* and *is still owned* by the Flakice Corporation. Therefore, appellant has no legal title whatever in the patent. Neither does he possess an equitable interest in it except as may be measured through ownership of stock in the corporation. It is elementary law to state that the corporate shell may not be disregarded unless it can be held that the corporation is, in effect, the alter ego of its owner.

It is true that the corporate fiction is at times disregarded. That, however, is an exception to the general rule that a corporation is deemed to be a distinct entity from the individuals who compose it. However, such exception is for the purpose of preventing fraud and for the protection of equitable rights of persons dealing with it. Such exception is never applied so as to favor the corporation.

We are of opinion that no deviation from the general rule can be properly made

here. While appellant was the inventor he did not wish to have the patent issued in his name, but in the name of a corporation he had previously set up. That corporation is a distinct entity and we do not think that he may now have us regard the corporation as being identical with himself. We are unable to see how an inventor who has a patent issued to a corporation, as was done here, can properly contend that he is still the owner of the very property he transferred to the corporation.

Appellant owns but 79 percent of the stock of the Flakice Corporation and, considering that the corporate property is owned directly by the stockholders, appellant is not the sole, but merely a co-owner with the other stockholders. Clearly, the patent was not granted to appellant as is provided for in the statute, nor is it owned by him.

■ We agree with the solicitor that R.S.4895, 35 U.S.C.A. § 44, and Rule 334 of the new Rules of Practice of the United States Patent Office, 35 U.S.C.A.Appendix, clearly make the terms "grant" and "issue" synonomous, and that the grant of a patent means nothing less than the grant of the entire interest therein. Therefore, a patent will issue to an individual when he is the sole owner of the invention. If he is not the sole owner it must issue jointly to him and the co-owners thereof. We cannot see how it can be properly held that appellant is the owner of the involved patent when in fact he actually has an interest of but 79 percent of the stock of the Flakice Corporation.

As was pointed out in the brief of the solicitor, there appears to be no logical stopping place as to the amount of stock which would constitute ownership with respect to the involved statute. Clearly, there is nothing in the law which points to any particular fraction as amounting to ownership.

■ As we view the situation, we are unable to presume that Congress, in its commendable attitude to compensate veterans in cases such as this, intended to benefit non-veterans who happen to be associated with them.

■ We are of opinion that the interpretation of Public Law 598 by the Commissioner of Patents requiring full ownership of the patent is the only reasonable interpretation to place upon it.

Several cases have been cited by counsel for appellant to sustain their contention, but for the reason that in our opinion they have no bearing upon the facts in the instant case we do not deem it necessary to discuss them.

For the reasons hereinbefore set out, the decision of the Commissioner of Patents is affirmed.

Affirmed.