**L. HELLER & SON, Inc., et al. v. FEDERAL TRADE COMMISSION.**

No. 10292.

United States Court of Appeals
Seventh Circuit.

Oct. 30, 1951.

James T. Welch, C. Robert Mathis, Washington, D. C., L. M. McBride, Chicago, Ill., McBride & Baker, Chicago, Ill., Davies, Richberg, Tydings, Beebe & Landa, Washington, D. C., of counsel, for petitioners.

James W. Cassedy, Asst. Gen. Counsel, Alan B. Hobbes, Attorney, Federal Trade Commission, Washington, D. C., W. T. Kelley, General Counsel, Washington, D. C., for respondent.

Before KERNER, FINNEGAN, and LINDLEY, Circuit Judges.

KERNER, Circuit Judge.

Petitioners ask us to review and set aside five cease and desist orders of the Federal Trade Commission. The orders were based upon separate complaints charging petitioners with engaging in unfair and deceptive acts and practices in violation of § 5(a) of the Federal Trade Commission Act, 15 U.S.C.A. § 45(a). By stipulation the cases were consolidated for the hearing, taking of testimony, and other purposes, and for the purpose of this review.

Petitioners import imitation pearls from foreign countries, either on strings, graduated or ungraduated as to sizes, or in bulk, marked with tags or labels either on the strings or the containers so as to disclose the name of the country in which they originated. After the pearls are received in the United States petitioners remove the tags or labels, fabricate the pearls into necklaces and other articles of jewelry, and distribute and sell them in interstate commerce without any tag or label indicating that the imitation pearls are of foreign origin, and cause the products to be sold to the public without revealing the fact of their foreign origin.

A substantial portion of the purchasing public has a general preference for products produced in the United States by American labor and containing domestic materials, where other considerations such as style and quality are equal, and has a prejudice against imported products. Imitation pearls produced in the United States are not generally distinguishable in quality and appearance from imported imitation pearls, and both are used for the same purpose in the production of jewelry. And the purchasing public, in the absence of a tag, mark, or other identification thereon by which foreign origin is indicated, understands and believes that necklaces of imported imitation pearls, offered for sale and sold in the United States, are products of domestic manufacture.

The Commission found that the selling and distributing of the imported imitation pearls without any labeling or other mark to indicate the foreign source or origin of such pearls have the capacity and tendency to mislead and deceive purchasers and prospective purchasers into the false and erroneous belief that such jewelry products are wholly of domestic manufacture, and place in the hands of retailers of such jewelry products a means and instrumentality by which members of the purchasing public may be misled and deceived into the false and erroneous belief that such products are wholly of domestic origin. In its opinion the Commission stated: " * *

imitation pearls which have been fully manufactured in foreign countries are imported by [petitioners] * * * and incorporated in necklaces and other articles of jewelry, which are then resold without marks to disclose the foreign origin of the imitation pearls. When such imitation pearls are used in necklaces they represent the principal component and the part which makes the necklaces valuable to the consumer. The consumer purchases an imitation pearl necklace not because of the string which holds the pearls together or the clasp which joins its ends, but because of the imitation pearls which are thus assembled and made useful as ornaments. The same is true of other articles of jewelry composed in substantial part of imitation pearls. Their only utility is for ornamentation and for that purpose imported imitation pearls require only proper assembling after being brought into this country. After such assembling, however, they still retain their essential characteristics as products of foreign manufacture."

Based upon these facts, the Commission ordered petitioners to cease and desist from "Offering for sale or selling said products without affirmatively and clearly disclosing thereon, or in immediate connection therewith, the country of origin of such imported imitation pearls."

In this court petitioners contend that the Commission was without jurisdiction or authority to prohibit the practices interdicted by the cease and desist orders entered herein. The argument is that Congress, by the enactment of the Tariff Act of 1930, as amended in 1938, 52 Stat. 1077, 19 U.S.C.A. § 1304, requiring that every article of foreign origin imported into the United States shall be marked so as to indicate to the ultimate purchaser in the United States the English name of the country of origin of the article, and authorizing the Secretary of the Treasury to regulate such marking, withdrew from the Commission jurisdiction or authority to regulate such marking.

■ We commence our study of the instant case with the knowledge that the Commission may require affirmative disclosures where necessary to prevent deception, and that failure to disclose by mark or label material facts concerning merchandise, which, if known to prospective purchasers, would influence their decisions of whether or not to purchase, is an unfair trade practice violative of § 5 of the Federal Trade Commission Act, Haskelite Manufacturing Corp. v. Federal Trade Commission, 7 Cir., 127 F.2d 765, and that when violation of § 5 has been shown, there is no necessity of considering whether a provision of the Tariff Act is similarly applicable. Segal v. Federal Trade Commission, 2 Cir., 142 F. 2d 255.

■ Petitioners admit that § 5 of the Act vests broad authority in the Commission to determine what constitutes and to prevent unfair or deceptive acts and practices in commerce. However, they say that that Act "is a general statute using broad terms which could cover all types of deceptive acts and practices in commerce." They insist that the Tariff Act as amended is a specific statute concerned particularly with the problem of deceptive misrepresentations to the ultimate purchaser through the failure to use, or the insufficient use of, marks of origin on imported goods. They make the point that in considering provisions of two statutes dealing with the same subject matter, one general in scope and language, and the other specifically concerned with a particular portion of the subject matter, the statute containing the specific terms covering the given subject matter must prevail over the general language of the other statute, Kepner v. United States, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114. And since Congress has expressly delegated authority over marks of origin to the Secretary of the Treasury, it necessarily withdrew regulatory jurisdiction over this subject from the Commission. Thus, the problem we are asked to solve is whether the Commission had jurisdiction to prohibit the practices herein involved.

■ It is true that in construing the meaning and scope of statutory provisions in order to determine the legislative intent or purpose, the entire legislative subject should be examined and every effort made to construe legislation so it will be con-

sistent with other expressions of legislative intent and purpose, yet the law is that limitations on existing powers of the Federal Government must be clearly manifested by an Act of Congress, United States v. United Mine Workers of America, 330 U.S. 258, 272, 67 S.Ct. 677, 91 L.Ed. 884, and repeal of those powers requires a clear expression of that purpose. Furthermore, repeals by implications are not favored, and may not be readily drawn from the language of the statute, or its legislative history. It is only where two laws are clearly repugnant to each other and both cannot be carried into effect that the later of the two laws will prevail. Posadas v. National City Bank, 296 U.S. 497, 56 S.Ct. 349, 80 L.Ed. 351, and United States v. Borden Company, 308 U.S. 188, 60 S.Ct. 182, 84 L.Ed. 181.

As we have already observed, the Federal Trade Commission Act is a broad statute forbidding "unfair methods of competition" and "unfair or deceptive acts or practices" in interstate commerce. The Tariff Act is a limited statute on an entirely different subject—the conditions under which foreign goods shall enter the United States. It authorizes the Secretary of the Treasury to require that imported articles, under certain conditions, show the country of origin. In determining whether the amended Tariff Act of 1938 curtailed the then existing powers and authority of the Commission, it is important to consider what was before Congress at the time of the adoption of § 1304. In our opinion Congress, at the time it was considering the 1938 amendment to the Tariff Act, was concerned solely with the extent to which the Treasury Department, incidentally to its collection of customs duties, should regulate the labeling of imported goods. Our examination of the amended Tariff Act discloses no language expressing an intention on the part of Congress to repeal § 5 of the Federal Trade Commission Act, or to diminish the authority or the power of the Commission to prevent deceptive trade practices, and since there exists no repugnancy between the two Acts, we are impelled to the conclusion that the Commission had jurisdiction and authority to prohibit the practices herein involved.

A decree will be entered for enforcement of the orders to cease and desist. It is so ordered.