39 C.C.P.A.(Patents)

### Application of MARTIN.

### Patent Appeal No. 5918.

United States Court of Customs
and Patent Appeals.

March 18, 1952.

O'Connell, J., dissented.

Procter, Smith & Harding, New York City (Arthur W. Procter, New York City, and Raymond J. Mawhinney, Washington, D.C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JOHNSON, Judge.

This is an appeal from a decision of the Commissioner of Patents denying an application by appellant for an extension of time in the life of Letters Patent No. 2,068,300, covering an improved form of aeroplane and issued to appellant, who is the inventor, on January 19, 1937. The application was made pursuant to Public Law 598, 81st Congress (2nd Session), 35 U.S.C.A. § 115. The pertinent portions of that law read as follows:

"Sec. 1. Any person who served honor-' ably *in the military or naval forces of the United States* at any time between December 7, 1941, and September 2, 1945—

"(a) who is the inventor or discoverer of an invention or discovery for which a pat-

ent was granted to him prior to September 2, 1945, the original term of which had not expired prior to said date and which is still owned by him, or who was prior to said date and continuously thereafter the sole owner of a patent for an invention or discovery which had not expired prior to said date; and

"(b) who, between December 7, 1941, and the date of the termination of his service but not later than the date of enactment of this Act, was not receiving income from said patent or patented invention or discovery; or whose income therefrom was substantially reduced as a result of his said service or because of the war, may obtain an extension of his patent for the term specified herein, upon application to the Commissioner of Patents within one year after the enactment of this Act and upon complying with the provisions of this Act. The period of extension of such patent shall be a further term from the expiration of the original term thereof equaling twice the length of the portion of his said service between the dates of December 7, 1941, and September 2, 1945, during which his patent was in force." [Italics added.]

Appellant claims, as the basis of his application for extension, that he served in the military and naval forces in the following instances:

(1) between October 31, 1944 and November 24, 1944, he served as chief mate of the S.S. Clark Howell in a voyage from Baltimore, Md., to San Pedro, California. The record indicates that appellant left the vessel at that point of his own accord.

(2) from January 8, 1945 to January 18, 1945, he served as first officer on a per diem basis with the Army Transportation Corps at the San Francisco Port of Embarkation, Fort Mason, California. The record indicates that he terminated his service there to accept other employment.

(3) from January 18, 1945 to July 23, 1945, he served as master of the S.S. Matthew Thornton on two round trips to the Marianas Islands, including Guam, Saipan and Tinian. During this period the S. S. Matthew Thornton was owned by the United States, represented by the War Shipping Administration, and was operated under

General Agency Operation by the Hammond Steamship Company which employed and paid the crew, including appellant. The vessel was at that time allocated to the United States Navy to carry military cargo and personnel for the account of the Navy.

In support of his claim that the above-enumerated instances constitute service "in the military or naval forces of the United States" within the meaning of the act involved, appellant urges the following facts of record: that he was issued a commission by the United States Maritime Service under regulations prescribed by the War Shipping Administration; that he took an oath of office similar to the oath taken by an officer in the Coast Guard; that, as an officer in the United States Maritime Service, he wore a prescribed uniform protected by statute; that, while in a combat zone under Navy orders, he was subject to disciplinary control of the Navy; that, while master of the S.S. Matthew Thornton, he had under his command a Navy gun crew and was subject to the same combat hazards as the Navy personnel of said crew. All the foregoing facts on which appellant bases his claim appear to be supported by the record and are not disputed by the Solicitor of the Patent Office.

The Commissioner of Patents characterized the service relied on by appellant as service "in ships of the Merchant Marine operating under control of the United States Navy" and denied appellant's request for extension on the sole ground that it was not service " * * * in the military or naval forces of the United States * * " within the meaning of Public Law 598, supra.

In his Notice of Appeal from the decision of the commissioner, appellant averred that: "5. The Commissioner of Patents erred in holding that service in ships of the Merchant Marine operating under control of the United States Navy is not or cannot be service in the military or naval forces of the United States within the meaning and intent of Public Law 598, Eighty-first Congress."

It is clear then that the sole question to be determined by us is: Did Congress, in extending the benefits of Public Law 598,

to "* * * any person who served honorably in the military or naval forces of the United States * * *," intend to include service in ships of the merchant marine, particularly when such ships are operating under control of the Navy?

■ Where the words of a statute are free from ambiguity and doubt, and the intent or meaning of the Congress is clear, construction of the statute is not only unnecessary but is not justified. However, if there is ambiguity, as we think there is in the instant case, a statute may be construed by the courts in order to determine the Congressional intent, and recourse may be had to external aids to construction if such is necessary. Such recourse to external aids must be had in the case at bar since there is nothing in the statute itself to resolve the question in issue.

The legislative history of the act yields no information which will adequately explain the language in question. See U. S. Code Congressional Service, 81st Congress, 2nd Session, 1950, pp. 2667–2669.

■ In construing a statute a court may resort to other enactments in which Congress has defined the language in issue, or otherwise explained its meaning. Such definitions, while not binding on the court, are highly persuasive, particularly when such other enactments are substantially contemporaneous with the statute involved in the case at bar.[1]

Resort to other Congressional enactments dealing with military and naval matters, and with veterans, sheds considerable light on the meaning usually given by Congress to the term "military or naval forces". Those enactments considered pertinent are discussed below.

The Internal Revenue Code, 26 U.S.C. § 3797, states that the term "military or naval forces of the United States" includes: "* * * the Marine Corps, the Coast Guard, the Army Nurse Corps, Female, the Women's Army Auxiliary Corps, the Navy

Nurse Corps, Female, and the Women's Reserve branch of the Naval Reserve." This definition does not include the merchant marine.

The Soldiers' and Sailors' Relief Act of 1940, 50 U.S.C.A.Appendix § 511, in defining persons in the "military service of the United States" states that it includes the following persons, and no others: "* * * All members of the Army of the United States, the United States Navy, the Marine Corps, the Coast Guard, and all officers of the Public Health Service detailed by proper authority for duty either with the Army or the Navy. * * *"

By subsequent acts the members of the women's organizations of the services enumerated were included as such persons. This definition in effect excludes persons who served in the merchant marine.[2]

In 50 U.S.C.A.Appendix § 1305, which is part of the National Emergency and War Shipping Acts, the term "veteran" is defined as meaning:

"* * * any person in the active military or naval service of the United States * * * or any person who is or has been eligible to receive a certificate for substantially continuous service in the merchant marine * * *." This court believes the distinct provisions with respect to "military or naval service" and "service in the merchant marine" in this act are highly significant. If Congress regarded the former term as generic to, and inclusive of, the latter, as urged upon us by appellant, why did it recite each of these terms in separate clauses in the above statutory definition?

We are of the opinion that the above statutory definitions strongly indicate that Congress does not regard the term "service in the military or naval forces" as encompassing service in the merchant marine within its usual and ordinary meaning. Moreover, we agree with the solicitor that the intent of Congress not to include mem-

---

1. See "Statutory Construction," by Crawford, 1940, section 223.

2. In Osbourne v. United States et al., 2 Cir., 164 F.2d 767, it was held that merchant seamen are not in the "military service of the United States" within the meaning of 50 U.S.C.A.Appendix, § 511, even though subject in some cases to court martial jurisdiction of the military under other statutes.

bers of the merchant marine as being in the military or naval forces of the United States is manifested also by the fact that it was found necessary to pass special enactments to give members of the merchant marine civilian re-employment rights, 50 U.S.C.A.Appendix, § 1472, and to establish decorations for service in the merchant marine, 50 U.S.C.A.Appendix, § 754. We concur with the solicitor's conclusions that those enactments of Congress are inconsistent with the concept or theory that such persons were in the "military or naval forces", for if they had been, separate acts would have been unnecessary since these matters were completely covered by the Selective Training and Service Act of 1940, see 50 U.S.C.A.Appendix, §§ 301-318.

In our opinion, all the statutory enactments discussed above compel an interpretation of Public Law 598, supra, which is contrary to that sought by appellant.

There is one statute which appears to lend some support to appellant's contentions that the contested language of Public Law 598, supra, includes service in the merchant marine. That is the Criminal Code, 18 U.S.C. § 2387, which defines the term "military or naval forces of the United States" as including: " * * * the Army of the United States, the Navy, Air Force, Marine Corps, Coast Guard, Naval Reserve, Marine Corps Reserve, and Coast Guard Reserve of the United States; and, when any merchant vessel is commissioned in the Navy or is in the service of the Army or the Navy, includes the master, officers, and crew of such vessel."

■ The Supreme Court has often stated that Congress is presumed to have used words in a statute in their usual and ordinary meaning unless there is evidence to the contrary. Old Colony Railroad Co. v. Commissioner of Internal Revenue, 284 U. S. 552, 52 S.Ct. 211, 76 L.Ed. 484; United States v. Stewart, 311 U.S. 60, 61 S.Ct. 102, 85 L.Ed. 40. Notwithstanding the last-mentioned statute, in view of the numerous above-mentioned enactments in which Congress has treated service in the merchant marine as separate and distinct from service in the military or naval forces of the United States, we are compelled to conclude that Congress does not consider the former to be included within the usual and ordinary meaning of the latter. It is well settled that Congress may expressly give a term a definition which differs from its ordinary meaning. Western Union Telegraph Co. v. Lenroot, 323 U.S. 490, 65 S.Ct. 335, 89 L.Ed. 414; Von Weise et al. v. Commissioner of Internal Revenue, 8 Cir., 69 F.2d 439. In the light of Congress's general usage of the terms in issue, as evidenced by the many other statutes discussed above, it is our belief that in 18 U.S.C. § 2387, supra, Congress exercised its prerogative to give the term "service in the military or naval forces" a special meaning in that particular statute.

■, Contemporaneous interpretation of the terms in issue by administrative or executive officials in the enforcement or application of other statutes may also shed light on the ordinary and usual meaning of such terms. Regulation 10 of the Veterans Administration, promulgated pursuant to 38 U.S.C.A. Ch. 12, defines in detail the term "military or naval forces", and such definition does not include service in the merchant marine, see 38 U.S.C.A., Ch. 12, Veterans Regulations.

Further, the Office of the Housing Expediter, in issuing regulations pursuant to the veterans' preference provisions of the Housing and Rent Act of 1947, 50 U.S.C.A. Appendix, § 1884, (see 24 CFR, 1950 Supp., 801.2), stated that "veteran" shall mean:

"(1) A person who has served in the active military or naval forces of the United States * * *.

* * * * * *

"(6) A person to whom the War Shipping Administration has issued a certificate of continuous service in the United States Merchant Marine * * *."

The treatment of service in the merchant marine and service in the military or naval forces in separate sections of this regulation clearly indicates that the Housing Expediter regards the two terms as separate and distinct, the latter not encompassing the former.

It is our belief that these regulations add force to our above-stated conclusion that "service in the military or naval forces of the United States" does not include "service in the merchant marine" within its usual and ordinary meaning.

██ In the light of the foregoing, we are of the opinion that the Commissioner of Patents properly characterized appellant's service as service in the merchant marine, and that he correctly construed Public Law 598, supra, in holding that appellant's service in the merchant marine was not service "* * * in the military or naval forces of the United States * *" within the meaning of that statute.

Under the clear terms of the statute, such service in the military or naval forces is a condition *sine qua non* which must first be satisfied if an applicant is to obtain the benefits of Public Law 598, supra. If an applicant fails to establish such service within the meaning of the act, the commissioner need not determine the existence of the other factors enumerated in Public Law 598 upon which extension of the life of a patent is to be based. Appellant having failed to show such service within the meaning of the act, it was proper for the commissioner to deny his application for extension upon this ground alone.

For the reasons hereinbefore set out, the decision of the Commissioner of Patents is affirmed.

Affirmed.

## O'CONNELL, Judge (dissenting).

This appeal by an inventor, master of the steamship Matthew Thornton, a ship of the Merchant Marine, allocated to the United States Navy and operated under its control in the combat zone of the Pacific in World War II for carrying military cargo and personnel, was taken for the assigned reason that the Commissioner of Patents erroneously refused to extend the term of appellant's unexpired patent in accordance with the provisions of Public Law 598, 81st Congress (Second Session).

The patent, which covered an improved form of aeroplane, was granted to appellant January 19, 1937 and had not expired prior to September 2, 1945, the time limit specified in the law.

There is no question that the appellant served in the Merchant Marine and met other prerequisites of the legislation as alleged by him. His petition was rejected by the commissioner for the stated reason that service performed by appellant was not, under the law, service by "any person who served honorably in the military or naval forces of the United States at any time between December 7, 1941, and September 2, 1945," whose income from his patent was substantially reduced as a result of his said service or because of the war.

Since Public Law 598 nowise defined what is meant by the terms employed therein "military or naval forces", or whose income from his issued patent was substantially reduced "as a result of his said service or because of the war," the statute is one which requires construction by extrinsic aid in order to resolve the conflict between the literal meaning of the terms and the reasonable intention of those who framed the law. The conclusion of the majority hereinbefore expressed has produced an absurd result, however, contrary to law and plainly at variance with the policy of the legislation as a whole. United States et al. v. American Trucking Associations, Inc., et al., 310 U.S. 534, 542–544, 60 S.Ct. 1059, 84 L.Ed. 1345.

Here the court has by the prevailing opinion indicated and held by necessary implication that the sailors who constituted the members of the gun crew on the steamship Matthew Thornton on the described missions would be entitled to the benefit of the involved enactment while their commanding officer on the same boat, with the identical assignment, would be deprived of the benefits of the statute.

The Solicitor for the Patent Office records in his brief the following essential facts upon which the commissioner has denied appellant's right to the benefits of the legislation:

"(1) Appellant was issued a commission by the United States Maritime Service un-

der regulations prescribed by the War Shipping Administration, which was established in the Executive Office of the President by Executive Order 9054 dated February 7, 1942;

"(2) appellant took an oath of office similar to the oath taken by an officer in the Coast Guard;

"(3) appellant as an officer in the United States Maritime Service wore a prescribed uniform;

"(4) appellant served as chief mate of the S.S. Clark Howell, between October 31, 1944 and November 24, 1944 in a voyage from Baltimore, Maryland, to San Pedro, California, leaving the vessel at that point of his own accord;

"(5) appellant served as first officer at $10.39 per diem with the Army Transportation Corps, the San Francisco Port of Embarkation, Fort Mason California, from January 8, 1945 to January 18, 1945, terminating his service there to accept other employment;

"(6) appellant served as master of the S. S. Matthew Thornton, from January 18, 1945 to July 23, 1945, on two round trip voyages to the Marianas Islands, including Guam, Saipan and Tinian, during which period the vessel· was owned by the United States, represented by the War Shipping Administration, under General Agency Operation by the Hammond Steamship Company and allocated to the United States Navy to carry military cargo and· personnel for the account of the Navy."

The foregoing facts have been supplemented by counsel for appellant with the following unchallenged observations from appellant's affidavit of record:

"Deponent took the same oath as Regular Navy personnel and had Regular Navy gun crews under his command including a First Lieutenant of the Regular Navy.

"Deponent was subject to all the air, submarine and naval attacks to which Regular Navy personnel was subject and ·received bars of recognition for his services in combat areas.

"Deponent was not free to terminate his services without first applying for and ob-taining permission and due relief and returning to authorized Navy Officials the secret papers entrusted to him by the Navy.

"Because of deponent's over-age status his voluntary act of accepting service with the Navy was similar to such service volunteered in the Regular Navy."

Resort to the legislative history of the enactment, as the solicitor properly points out, discloses no reference in the respective reports of the Congressional committees which in any sense explain the language in question, other than the explicit statement recorded in the Report of the Senate Committee, that the purpose of the bill then pending and subsequently passed was to provide for the extension of the life of patents previously issued to "veterans" of World War II. Reference to the law as enacted nowise indicates what "veterans" or persons were to be thereby classified or qualified to receive the benefits with which they were endowed by the provisions of the law.

The Act of April 29, 1943, as amended by the Act of August 10, 1946, Ch. 948, 60 Stat. 976, now section 1305(b) of Title 50 Appendix, of .the United States Code Annotated, defines the word "veteran" to include: "any person in the active military or naval service of the United States during the present war, or any person who served in the active military or naval service of the United States on or after September 16, 1940, and prior to the termination of the present war, and who has been discharged or released therefrom under honorable conditions, or any person who is or has been eligible to receive a certificate for substantially continuous service in the merchant marine as provided in the Act of June 23, 1943 [section 1471 of this Appendix]. * * *"

The Solicitor for the Patent Office in his brief likewise points out that the Housing Administrator in issuing regulations, pursuant to the Veterans' Preference Regulations under the Housing and Rent Act of 1947, for the guidance of his employees, as well as the public, provided that the word "veteran" shall mean:

"(1) a person who has served in the active military or naval forces of the United States on or after September 16, 1940, and who has been discharged or released therefrom under conditions other than dishonorable;

"(6) a person to whom the War Shipping Administration has issued a certificate of continuous service in the United States Merchant Marine * * *."

The commissioner in rendering his decision in the instant case fortified his position by the citation (1) of a ruling contained in the opinion of the Assistant Comptroller General of the United States, 24 Decisions of the Comptroller General 344, and (2) the regulation of the Office of the Housing Expediter published in the Federal Register, July 6, 1950, similar to the one hereinbefore cited. The ruling of the Office of the Comptroller (1), supra, held that under section 212 of the Economy Act of June 30, 1932, 47 Stat. 406, 5 U.S.C.A. § 59a, a retired engineer of a ship operated for the War Shipping Administration was not entitled for the period of his active incumbency to pay as a retired commissioned officer of the Coast Guard in excess of a certain amount.

No judicial construction of the legislation on the part of any court was cited by the Commissioner of Patents in support of his action and the solicitor in support of the commissioner's holding has had recourse in his brief to various other Congressional enactments and contemporary administrative regulations dealing with military and naval personnel, including veterans. He has properly conceded that the legislation is a remedial statute which should be construed in favor of the persons to be benefited thereby if such construction is reasonable. In re Field, 38 C.C.P.A., Patents, 1175, 190 F.2d 268. Furthermore, where the language of the statute is susceptible of construction which preserves the usefulness of the involved section, the judicial duty rests upon the court to give expression to the intendment of the law. Armstrong Paint & Varnish Works Co. v. Nu-Enamel Corp., 305 U.S. 315, 333, 59 S.Ct. 191, 83 L.Ed. 195.

The Criminal Code of the United States Code, Title 18, Section 9 [revised Section 2387], for example, defines the term "military or naval forces" so that it expressly includes: " * * * the Army of the United States, as defined in section 2 of Title 10, the Navy, the Marine Corps, Coast Guard, Naval Reserve, and Marine Corps Reserve of the United States; and, when any merchant vessel is commissioned in the Navy or is in the service of the Army or the Navy, includes the master, officers, and crew of such vessel."

The solicitor with respect to appellant's service qualification for the specific benefits of Public Law 598 also makes the following pertinent statement in his brief: "With respect to appellant's service on the S.S. Matthew Thornton, which the record shows was allocated to the Navy to carry military cargo and personnel for the account of the Navy, it is conceded that under the definition in the Criminal Code, appellant might be considered to have been in the military or naval forces of the United States. * * *"

The solicitor has also quoted excerpts from title 26, section 3797, of the Internal Revenue Code wherein Congress used the term "military or naval forces of the United States" with a particularized definition attached thereto which listed the various branches of the services to be benefited thereby. Congress did not there specifically list the Merchant Marine.

Congress in the enactment of the Soldiers' and Sailors' Civil Relief Act of 1940, likewise quoted so far as pertinent by the solicitor, expressed a negative limitation or definition by enumerating and naming the branches of the service which were not to be considered a part of "the military service of the United States". In that category the Merchant Marine was specifically excluded. It should be noted, however, that the term here in issue, "military or naval forces", is a broader provision than "military service."

Various legislative enactments and administrative regulations discussed and cited on behalf of the Patent Office disclose that Congress and the different agencies of the

Government dealing with the interpretation and application of what is meant by the generic term "military or naval forces" recognized, as a workable rule of construction, the variable meaning and application of that term and that as enacted into law and construed by Congress, it had different meanings for different purposes.

The summary of the argument on behalf of the Patent Office appears to be that Congress having explicitly defined for the courts in certain other enactments that the term "military or naval forces" excluded the Merchant Marine, the courts are without authority here to define the term otherwise with respect to the legislation in issue.[1] However, the very legislative materials upon which the representatives of the Patent Office have relied to exclude appellant from the benefit of Public Law 598, refute the assumption that the term, "military or naval forces", has a settled meaning. See United States v. Dickerson, 310 U.S. 554, 562, 60 S.Ct. 1034, 84 L.Ed. 1356. Therefore, the ambiguous words must be viewed in their setting so as to determine the definite purpose of the legislation. United States et al. v. American Trucking Associations, Inc., et al., 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345; United States v. Hendee, 124 U.S. 309, 8 S.Ct. 507, 31 L. Ed. 465.

Moreover, in construing various statutory enactments to determine legislative intent, every effort should be made to construe the particular legislation so that it will be consistent with, and not repugnant to, other expressions of legislative intent and purpose on the legislative subject. L. Heller & Son v. Federal Trade Commission, 7 Cir., 191 F.2d 954. Viewed in that light, there can be no escape from the fact that down through the years Congress has conscientiously provided special legislative benefits for all persons who have honorably served in the various and specific branches of the military and naval forces of the United States, including the Merchant Marine. Numerous different agencies of the Government have been established accordingly and conducted throughout the nation to effect the purpose of Congress and to make sure that persons for whom particular benefits were intended, and none other, received those benefits. The legislation in issue was expressly designed for the benefit of any person who is the inventor or owner of an unexpired patent and whose income therefrom was substantially reduced as a result of his services in the military or naval forces "or because of the war."

Congress defined no restrictions with respect to the limited benefits that were endowed upon those persons who, in the eyes of the Commissioner of Patents and the federal courts, by which his actions in such matters are governed, qualified in any particular case, by the nature of the service rendered by him within the purview of the law and as a person who "was not receiving income from said patent or patented invention or discovery; or whose income therefrom was substantially reduced as a result of his said services *or because of the war, * * *."* (Italics supplied.)

The contested provision was an additional or collateral benefit, of more or less significance, devised by Congress to reimburse, in a measure, and across the board that limited number of inventors or owners of patents whose loss in connection therewith resulted in each instance "because of the war."

There is not the slightest shadow of a doubt that the special legislation embodied in Public Law 598 was supplementary to and nowise amendatory of any of the legislation previously passed for the benefit of the members of the respective branches of the services and accurately described in the prevailing opinion. The unification of the armed services has not affected the benefits heretofore provided by Congress for the members of those services as a major occupation.

For the reasons stated, the decision of the Commissioner of Patents should be reversed.

---

1. See, United States v. Half-Moon Mfg. & Trading Co., Inc., 28 C.C.P.A.,Customs, 1.