39 C.C.P.A.(Patents)
**Application of BLOOD.**

**Patent Appeal No. 5929.**

United States Court of Customs and Patent Appeals.

June 24, 1952.

Irving D. Gibson, Sacramento, Cal., for appellant.

E. L. Reynolds, Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and JACKSON (retired), Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Commissioner of Patents denying appellant's application for extension of the term of a patent issued prior to September 2, 1945, jointly to appellant, who was the inventor of the subject matter therein, and to W. H. Gerber and George S. Tyler, each as assignee of a 24% interest.

The application is predicated on Public Law 598, 81st Cong., 2d Sess., which became effective June 30, 1950, 64 Stat. 316, 35 U.S.C.A. §§ 115 through 118.

The pertinent paragraphs of the act read:

"§ 1. Any person who served honorably in the military or naval forces of the United States at any time between December 7, 1941, and September 2, 1945—

"(a) who is the inventor or discoverer of an invention or discovery for which a patent was granted to him prior to September 2, 1945, the original term of which had not expired prior to said date and which is still owned by him, or who was prior to said date and continuously thereafter the sole owner of a patent for an invention or discovery which had not expired prior to said date; and

"(b) who, between December 7, 1941, and the date of the termination of his service but not later than the date of enactment of this Act, was not receiving income from said patent or patented invention or discovery; or whose income therefrom was substantially reduced as a result of his said service or because of the war, may obtain an extension of his patent for the term specified herein, upon application to the Commissioner of Patents within one year after the enactment of this Act, and upon complying with the provisions of this Act. The period of extension of such patent shall be a further term from the expiration of the original term thereof equaling twice the length of the portion of his said service between the dates of December 7, 1941, and September 2, 1945, during which his patent was in force.

\*     \*     \*     \*     \*     \*

"§ 3. On the filing of such application the Commissioner of Patents shall cause an examination thereof to be made and, if on such examination it shall appear that such application conforms, or by amendment or supplement is made to conform, to the requirements of this Act, the Commissioner shall cause notice of such application to be published at least once in the Official Gazette. Any person who believes that he would be injured by such extension may within forty-five days from such publication oppose the same on the ground that any of the statements in the application for extension is not true in fact, which notice of opposition shall be verified. In all cases where notice of opposition is filed the Commissioner of Patents shall notify the applicant for extension thereof and set a day for hearing. If after such hearing the Commissioner of Patents is of the opinion that such extension should not be granted, he may deny the application therefor, stating in writing his reasons for such denial. Where an extension is refused the applicant therefor shall have the same remedy by appeal from the deci-

sion of the Commissioner to the United States Court of Customs and Patent Appeals as is now provided by law where an applicant for patent is dissatisfied with the decision of the Patent Office Board of Appeals. If no opposition to the grant of the extension is filed, or if, after opposition is filed, it shall be decided that the applicant is entitled to the extension asked for, the Commissioner of Patents shall issue a certificate that the term of said patent is extended for the additional period provided therein and shall cause notice of such extension to be published in the Official Gazette and marked upon copies of the patent for sale by the Patent Office, in such manner as the Commissioner may determine."

The record discloses that appellant served honorably in the military forces of the United States from November 24, 1942, to January 14, 1946.

Appellant's verified application for extension, filed March 29, 1951, avers that he is the inventor of an asphalt charging and conditioning device for which a patent, No. 2,081,472, was issued to him on May 10, 1937 [the patent shows it was issued on May 25, 1937]; that the involved patent was assigned to a corporation known as Charles R. Blood Associates Incorporated; and that appellant is, and at all times since the formation of the above-mentioned corporation and the assignment of patent to it has been, the owner of a majority, to wit 52%, of the authorized, issued and outstanding shares of the corporation.

The record discloses that the application for the involved patent was filed by appellant but that prior to its issuance he had assigned a 24% interest to W. H. Gerber and a 24% interest to George S. Tyler; that the patent was issued on May 25, 1937, jointly to appellant and W. H. Gerber and George S. Tyler, each of the two persons last named being an assignee, with each having a 24% interest in the patent; that on June 30, 1950, the effective date of Public Law 598, supra, and at the time of the filing of appellant's application, the involved patent was owned by Charles R. Blood Associates Incorporated, with ap-

pellant owning 52% of the authorized, issued and outstanding shares of the corporation, and with W. H. Gerber and George S. Tyler each owning 24% of the shares of the corporation.

On August 6, 1951, appellant filed an amended application in which he stated that "at the time of filing this amended application, said applicant was and is the sole owner of said above-named patent; * * *." However, he failed to state when he became the sole owner. His first verified application states that the patent was owned by Charles R. Blood Associates Incorporated, and that he owned 52% of the shares of the corporation. It therefore is apparent that appellant acquired sole ownership sometime between March 29, 1951, the filing date of his original application, and August 6, 1951, the date of the filing of his amended application.

The Commissioner of Patents held that because the patent was issued jointly to appellant and W. H. Gerber and George S. Tyler, with Gerber and Tyler being assignees of a 24% interest each, and because at the time of the approval of Public Law 598, supra, the patent was owned by Charles R. Blood Associates Incorporated, the patent here involved "was not issued to applicant and is not still owned by him within the meaning of Public Law 598, 81st Congress."

■■ In view of the facts of record, we think appellant clearly cannot prevail. In the case of In re Field, 190 F.2d 268, 38 C.C. P.A., Patents, 1175, appellant, a veteran, owned 79% of the shares of a corporation owning the patent for which he sought an extension. Appellant was the inventor of the subject matter of the patent but it had been issued to the corporation by virtue of an assignment prior to issuance and was still owned by that corporation when appellant filed his application for extension. We there held that the appellant was not entitled to the requested extension because, as we interpret it, Public Law 598, supra, requires that the applicant for extension have full ownership of the patent. It was our view that appellant in that case did not have such full ownership but was merely a co-owner of an interest in the patent with the other stockholders.

It is clear from both appellant's application and an examination of the patent itself that the patent was issued jointly to appellant, W. H. Gerber and George S. Tyler. The original verified application shows that at the time the application was filed the patent was owned by Charles R. Blood Associates Incorporated. Therefore, at the time of the effective date of Public Law 598, supra, appellant had no legal title to the patent. Rather, he owned 52% of the outstanding shares of the corporation which owned the patent and thus only owned an indirect interest in the patent as a co-owner with the other stockholders.

Appellant, in his brief, attempts to distinguish this case from In re Field, supra, because he claims, as averred in his above-mentioned amended application, that the patent "is still owned by him" within the meaning of section 1 of the Act. However, it is clear from the record, as noted above, that the patent was issued not to him alone but to him and Gerber and Tyler. It is also clear, as we have already noted, that the patent was owned at the time of the effective date of Public Law 598, supra, and at the time of the filing of appellant's original application by the above-mentioned corporation and not solely owned by appellant. It is therefore also clear, as above stated, that appellant acquired full ownership of the patent sometime between March 29, 1951, the date of filing his original application, and August 6, 1951, the date of the filing of his amended application. In the recent case of In re Miller, 193 F.2d 339, 39 C.C.P.A., Patents ——, 92 USPQ 213, we held that Public Law 598, supra, requires sole and continuous ownership by the inventor or owner beginning at a time prior to September 2, 1945, and continuing to June 30, 1950, the effective date of Public Law 598, supra. Therefore, a veteran who is an inventor and who has parted with the ownership of his patent previous to the effective date of the Act cannot, by later obtaining sole ownership of the patent after the effective date of that Act, be held to "still own it" within the purview of that

law. See In re Miller, supra, for a full discussion of this subject. Accordingly, we are of the opinion that appellant's acquiring full ownership of the patent after the effective date of Public Law 598, supra, can avail him nothing.

Appellant also contends that because the commissioner raised no issue of fact by filing a notice of opposition to appellant's application, and because the commissioner held no hearing to afford appellant an opportunity to adduce evidence in support of his application, it was error for the commissioner to refuse to grant the extension.

It will be noted that section 3 of Public Law 598, supra, requires the commissioner to "cause an examination thereof to be made and, *if* on such examination it shall appear that such application conforms, or by amendment or supplement is made to conform, to the requirements of this Act, the Commissioner shall cause notice of such application to be published at least once in the Official Gazette." The statute then prescribes the procedure for the filing of notice of opposition by any person who believes he would be injured by such extension, setting a day for hearing, and for further procedure. It also provides that if no notice of opposition is filed the extension shall be granted.

In this case the commissioner caused an examination of the application to be made and found that the application did not conform to the requirements of Public Law 598, supra. Therefore he did not cause notice of the application to be published in the Official Gazette and consequently there was no opportunity for "any person who believes he would be injured by such extension" to file a notice of opposition.

We think if the facts stated in the application and the amended application clearly show, as they do in this case, that the applicant is not entitled to have the term of the patent extended, it is the duty of the commissioner to refuse to grant the extension and, under such circumstances, it is not necessary or proper for the commissioner to cause notice of the application to be published in the Official Gazette so that interested parties may file notice of opposition. This contention of the appellant is therefore without merit.

Counsel for appellant also complains in his brief that the commissioner erred in failing to hold a hearing. However, this issue is not raised in appellant's reasons of appeal and that question is therefore not properly before this court. In re Davis, 123 F.2d 651, 29 C.C.P.A., Patents, 723. Moreover, we find nothing in the record indicating that appellant ever made any request for a hearing. However, a hearing could do no more than support the allegations of the original and amended applications and there is no issue here raised as to their correctness. Hence, although the law provides for a hearing in opposition proceedings under section 3, supra, we find nothing in the law that requires a hearing in cases where the allegations of the application, in original or amended form, clearly show that the extension should not be granted, and we do not think that the commissioner need grant a hearing in such a case.

In view of the foregoing, we think there was no error in the decision of the Commissioner of Patents and it is therefore affirmed.

Affirmed.

JACKSON, Judge, retired, recalled to participate herein.