## OLD COLONY RAILROAD CO. *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 349. Argued January 18, 1932.—Decided February 15, 1932.

*Mr. James S. Y. Ivins,* with whom *Mr Kingman Brewster* was on the brief, for petitioner.

*Assistant Attorney General Youngquist,* with whom *Solicitor General Thacher,* and *Messrs. Sewall Key, J.*

*Louis Monarch,* and *Paul D. Miller* were on the brief, for respondent.

Mr. JUSTICE ROBERTS delivered the opinion of the Court.

The Revenue Act of 1921 defines gross income as including gains, profits and income derived by the taxpayer from any source whatever, and provides that in computing net income of a corporation "all interest paid or accrued within the taxable year on its indebtedness" is deductible from such gross income. Treasury regulations promulgated under authority of the statute state that if

bonds are issued by a corporation at a premium the net amount of such premium is gain or income which should be amortized over the life of the bonds.[1]

In making return for 1921 the Old Colony Railroad Company deducted from gross income the full amount paid during the year as interest to holders of its bonds. These had been issued at various dates between 1895 and 1904 and the subscribers had taken them at prices in excess of par. The total of the premiums thus paid the company was $199,528.08. At the dates of issuance of the bonds, and until 1914, the company kept its accounts on a cash basis and credited the sums so received in an account designated " Premium on Bonds." In the last named year the Interstate Commerce Commission ordered that they should be amortized over the periods of the respective lives of the bonds. The company complied under protest, extinguished by appropriate entries the ratable proportion of the premiums for the years prior to 1914, and thereafter reported to the Commission as income a yearly ratable proportion of the remainder of the premiums, but entered the same on its books in the profit and loss account (a surplus account) and not as income. The proportion of the premiums attributable to 1921 and reported to the Commission as income for that year was $6,960.64, but the company did not in its tax return include this figure in gross income or deduct it from the amount of interest paid on its bonds.[2] The Commis-

---

[1] Act of November 3, 1921, c. 136; §§ 213, 234; 42 Stat. 227, 237, 254. Treasury Regulations 62, Art. 545.

[2] By lease dated February 15, 1893, still in force, petitioner leased all its property to The New York, New Haven and Hartford Railroad Company, the lessee agreeing to operate and maintain petitioner's railroad, to assume the payment of the principal of and interest upon its bonded indebtedness and other obligations, and to pay a certain additional sum as rental. Although the bonds in question were issued

sioner, in his audit of the return, made no adjustment in the item of interest paid, but added the sum of $6,960.64 to the company's gross income for 1921, and found a resulting deficiency in the amount of tax. Upon a petition for redetermination the Board of Tax Appeals held that the Commissioner erred in treating this amount as taxable income of the year in question.[3]

The Commissioner asked reconsideration, asserting that the mere form of the calculation by which he arrived at a redetermination of the tax was immaterial and that the result was correct since the year's proportion of amortization of bond premiums was in reality a deduction from the stipulated interest paid the bondholders. The Board adhered to its ruling.[4] The Circuit Court of Appeals adopted the Commissioner's view and reversed the Board.[5] The court distinguished its earlier decision in

---

after the effective date of the lease they were the direct obligation of petitioner and it remained liable for the payment of interest. Petitioner bases certain arguments upon the fact that in the tax year under review it charged itself with bond interest received from the lessee and took credit for the same amount as interest paid to bondholders. These facts are unimportant in the view we take of the case. We shall treat it as if the lease were nonexistent and the bonds had been issued by a company operating its own property.

[3] 18 B. T. A. 267. In reaching this conclusion the Board followed its earlier decision in Old Colony Railroad Co. v. Commissioner, 6 B. T. A. 1025, wherein it had held that under similar provisions of the Revenue Act of 1918 and a like treasury regulation the premiums were income in the year in which they were received, thus becoming a part of the company's capital prior to the adoption of the Sixteenth Amendment and not taxable. See Doyle. v. Mitchell Bros. Co., 247 U. S. 179; Lynch v. Turrish, 247 U. S. 221; Southern Pacific Co. v. Lowe, 247 U. S. 330; Goodrich v. Edwards, 255 U. S. 527. The Board's holding was affirmed in Commissioner v. Old Colony R. Co., 26 F. (2d) 408. See also Chicago, R. I. & P. R. Co. v. Commissioner, 47 F. (2d) 990.

[4] 18 B. T. A. 267.

[5] 50 F. (2d) 896.

*Commissioner* v. *Old Colony R. Co., supra,* note 3, stating that its attention had not been called to the fact that the profit made in the years prior to 1913 was not being taxed, but was used only to determine the expense of the payment of interest on the bonds for the year 1921. We granted certiorari.

The regulations state that the net amount of premium is gain or income. Necessarily, then, the premium is gain or income of the year in which it is received. The provisions of the Revenue Acts of 1918, 1921, 1924 and 1926 are the same as respects gross income of corporations and deductions therefrom. The regulations under the relevant sections of the acts of 1918, 1924 and 1926 employ substantially the same phraseology as that found in those issued under the 1921 Act.[6] The repeated reënactment of a statute without substantial change may amount to an implied legislative approval of a construction placed upon it by executive officers. *National Lead Co.* v. *United States,* 252 U. S. 140; *United States* v. *Farrar,* 281 U. S. 624; *Poe* v. *Seaborn,* 282 U. S. 101, 116.

There is no ambiguity in the language of the regulation, which defines a bond premium as income. As a corollary from this definition it follows that the petitioner received the income represented by the premiums here involved prior to the adoption of the Sixteenth Amendment, for these premiums could not be income for any other year than that in which they were received. That income had become capital prior to the adoption of the Amendment and could not be reached by a subsequent income tax act. This conclusion is not affected by the provision of the regulation which allows the proration or amortization of this item over the life of the bonds, and extends to the taxpayer the privilege of treating the premium as income

---

[6] Regulations 45, Art. 544; Regulations 62, Art. 545; Regulations 69, Art. 545; Regulations 74, Art. 68.

received in instalments instead of in a lump sum in the year of its receipt.

Nor does the fact that the regulation thus ameliorates the burden of the taxpayer authorize the use of the grant to convert income of years prior to the effective date of the Sixteenth Amendment into income assumed to have been received thereafter. The amortization requirement may properly be applied to premiums paid subsequent to March 1, 1913, but cannot operate to contradict the definition of a premium as gain or income.

The Government, however, insists that nothwithstanding the regulation's designation of a premium paid by the subscriber to corporate bonds as income it is not such to the corporation, but is in the nature of capital loaned which must be returned to the lender during the life of the bonds. Reference is made to the practice of bond buyers in determining the amount they will bid. It is said that a purchaser, in arriving at the price he is willing to pay for a bond, has regard to the current rate of interest for money, and if the bond bears a stipulated rate in excess of the ruling rate he will pay a premium. He does this although he knows that at maturity he can only receive the par of the bond, but considers that he will be repaid the premium by the excess of the agreed rate of interest over the rate he is content to receive. On the other hand, where the stipulated interest is less than the going rate bond buyers will bid less than the par of the bond by such amount as is necessary to redress the difference between the agreed rate of interest and the going rate which the subscriber demands. The conclusion is that the actual return to one who pays a premium is less than the nominal interest carried by the bond, and to one who buys at a discount is greater than such nominal rate. The argument is that although the regulations are inaptly phrased and are susceptible of the construction petitioner places upon them their real intent was to adjust the nomi-

nal interest paid on a corporation's indebtedness to the
actual amount it is paying for the use of the money repre-
sented by the par of the bond,—that is, to what account-
ants have called the "effective rate" of interest. In this
view the Government says that each time the debtor pays
an instalment of stipulated interest what it in fact does is
to pay interest at a lesser rate on the par of the bond and
return a ratable proportion of the premium, which really
constitutes a loan by the investor to the debtor. Thus
that portion of the instalment paid at each interest date
which is a return of the loaned capital represented by the
premium must be deducted from the nominal interest in
order to arrive at the "effective rate" of interest the
debtor is really paying. It is said the regulation is in-
tended to afford a method of adjusting the taxpayer's
income in the light of these facts, and that it is immaterial
whether, as provided, the pro rata yearly return of capital
loaned in excess of the face of the bond is added to gross
income or deducted from interest paid, for in either case
the result in dollars will be exactly the same.

Doubtless the premium received by the corporation is
acquired capital rather than income. But if this be ad-
mitted the concession does not answer the question
whether a premium paid prior to 1913 is taxable. Ob-
viously, therefore, it is not enough for the Government's
purpose to disregard the regulation which designates this
item as income or gain. The Commissioner must and
does go farther and contend that the receipt of such a
premium reduces the item of interest paid and renders
the sum nominated as such in the bond something dif-
ferent from the "interest . . . on its indebtedness" men-
tioned in § 234 of the Revenue Act of 1921 as a permis-
sible deduction from gross income.

In other words the contention is that by the use of the
quoted phrase the statute did not intend to allow the de-
duction of the amount agreed to be paid, which the con-

tract denominates "interest," but of a different sum to be ascertained by a calculation which will allocate the payment between a partial and ratable return of the premium and " effective " interest on the par of the security.

Is this the reasonable construction of the language of the act,—" all interest . . . on its indebtedness "? The rule which should be applied is established by many decisions. " The legislature must be presumed to use words in their known and ordinary signification." *Levy's Lessee* v. *McCartee,* 6 Pet. 102, 110. " The popular or received import of words furnishes the general rule for the interpretation of public laws." *Maillard* v. *Lawrence,* 16 How. 251, 261. And see *United States* v. *Buffalo Gas Co.,* 172 U. S. 339, 341; *United States* v. *First Nat. Bank,* 234 U. S. 245, 258; *Caminetti* v. *United States,* 242 U. S. 470, 485. As was said in *Lynch* v. *Alworth-Stephens Co.,* 267 U. S. 364, 370, " the plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover." This rule is applied to taxing acts: *DeGanay* v. *Lederer,* 250 U. S. 376, 381.

Applying the accepted tests to the language of the statute, we are of opinion that the construction contended for by the Commissioner is inadmissible. In common parlance the bonded indebtedness of a corporation imports the total face of its outstanding bonds,—the amount which must be paid at their maturity. The phrase is not generally used to connote par plus an unreturned proportion of premium.

And as respects " interest," the usual import of the term is the amount which one has contracted to pay for the use of borrowed money. He who pays and he who receives payment of the stipulated amount conceives that the whole is interest. In the ordinary affairs of life no one stops for refined analysis of the nature of a premium,

or considers that the periodic payment universally called "interest" is in part something wholly distinct—that is, a return of borrowed capital. It has remained for the theory of accounting to point out this refinement. We cannot believe that Congress used the word having in mind any concept other than the usual, ordinary and everyday meaning of the term, or that it was acquainted with the accountants' phrase "effective rate" of interest and intended that as the measure of the permitted deduction.

In the present case, as with corporate obligations generally, the bond has a par value and each coupon stipulates that on a date therein mentioned the company will pay a named sum as interest on the bond. Until the present contention was put forward no one supposed that the taxpayer was not entitled to deduct the entire amount specified in the coupon and actually paid during the taxable year as interest. The person who receives this sum certainly considers it interest and so, apparently, does the Government, which requires him to return it all as such and does not permit him, if he or his predecessor holder paid more than par for the bond, to treat part of the sum received as a return of capital loaned and the remainder as interest received.

In short, we think that in the common understanding "interest" means what is usually called interest by those who pay and those who receive the amount so denominated in bond and coupon, and that the words of the statute permit the deduction of that sum, and do not refer to some esoteric concept derived from subtle and theoretic analysis.

If there were doubt as to the connotation of the term, and another meaning might be adopted, the fact of its use in a tax statute would incline the scale to the construction most favorable to the taxpayer. *Gould* v. *Gould*, 245 U. S. 151; *United States* v. *Merriam*, 263 U. S.

179; *Bowers* v. *Lighterage Co.,* 273 U. S. 346; *United States* v. *Updike,* 281 U. S. 489; *Burnet* v. *Niagara Falls Brewing Co.,* 282 U. S. 648.

A further contention is advanced that inasmuch as by the ruling of the Interstate Commerce Commission the company was compelled to designate the annual amount of premium amortization as income, and under protest did so treat it in reporting to the Commission, the ruling of the Commissioner of Internal Revenue is in conformity with the method of bookkeeping adopted by the petitioner and hence is justified by § 212 (b) of the Revenue Act of 1921,[7] which provides that the net income of a corporation shall be computed in accordance with the method of accounting regularly employed in keeping the books of the taxpayer, and by § 213 (a) of the same act, which authorizes the accrual method of reporting income. This position is inconsistent with the other arguments advanced. If the amortized premium is to be deducted from interest paid by the taxpayer it is not income. If it is income, then by hypothesis it is income received prior to the date of the Sixteenth Amendment and not income which accrues to the taxpayer from year to year. Moreover, the rules of accounting enforced upon a carrier by the Interstate Commerce Commission are not binding upon the Commissioner, nor may he resort to the rules of that body, made for other purposes, for the determination of tax liability under the revenue acts. *Kansas City Southern Ry. Co.* v. *Commissioner,* 52 F. (2d) 372; certiorari denied, *post,* p. 676. Compare *Chicago, R. I. & P. Ry. Co.* v. *Commissioner,* 13 B. T. A. 988, 1027; *Fall River Electric Light Co.* v. *Commissioner,* 23 B. T. A. 168.

We conclude that the yearly pro rata amortization of bond premiums is not income received in the year to which

---

[7] Note 1, *supra.*

it is applicable; and that so far as the deduction of interest on indebtedness is concerned the fact that a premium was paid does not operate to reduce interest paid on bonded indebtedness within the meaning of the revenue acts.

The judgment is

*Reversed.*