DORWARD & SONS CO. PACIFIC VEGETABLE OIL CORP. v. UNITED STATES (No. 4679) [1]

---

[1] C. A. D. 512.

United States Court of Customs and Patent Appeals, January 14, 1953

*Lawrence, Tuttle & Harper* (*George R. Tuttle* and *Frank L. Lawrence* of counsel) for appellants.

*Charles J. Wagner*, Acting Assistant Attorney General (*Joseph F. Donohue* and *Richard F. Weeks*, special attorneys, of counsel), for the United States.

[Oral argument December 5, 1951, by Mr. Tuttle and Mr. Donohue; reargued on petition for rehearing December 10, 1952, by Mr. Tuttle and Mr. Weeks]

Before GARRETT, Chief Judge, and WORLEY, and JACKSON (recalled after retirement), Associate Judges [original argument before GARRETT, Chief Judge, and JACKSON (before retirement), O'CONNELL, JOHNSON, and WORLEY, Associate Judges].

WORLEY, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, rendered pursuant to its decision, C. D. 1290; overruling the protests of appellants against the assessment of an import tax on rapeseed oil by the Collector of Customs at the port of San Francisco.

The appeal was originally argued before this court on December 5, 1951, and on March 18, 1952, we rendered our decision which affirmed the judgment of the United States Customs Court. On April 15, 1952, appellants filed a petition for rehearing specifying "points supposed to have been overlooked or misapprehended by the Court, in that decision."

The petition was granted and argument was had thereon December 10, 1952.

The facts are as follows:

Merchandise, consisting of two shipments of refined rapeseed oil, was admitted free of duty under paragraph 1732 of the Tariff Act of 1930 but was assessed with an import tax by the collector at the rate of 4½ cents per pound pursuant to section 2491 (b) of the Internal Revenue Code (26 U. S. C., sec. 2491 (b)).

Appellants protested the action of the collector, contending that the rapeseed oil in question was free of the tax, as provided for in section 2491 (f). The involved subsections read as follows:

(b) Sesame oil provided for in paragraph 1732 of the Tariff Act of 1930, sunflower oil, rapeseed oil, kapok oil, hempseed oil, perilla oil, fatty acids derived from any of the foregoing or from linseed oil, and salts of any of the foregoing; all the foregoing, whether or not refined, sulphonated, sulphated, hydrogenated, or otherwise processed, 4½ cents per pound;

(f) The tax imposed under subsection (b) shall not apply to rapeseed oil imported to be used in the manufacture of rubber substitutes or lubricating oil, and the Commissioner of Customs shall, with the approval of the Secretary, prescribe methods and regulations to carry out this subsection.

In answer to the protests, the Collector of Customs responded that such "rapeseed oil was not used in the manufacture of rubber substitutes (T. D. 49643 (6)), but was used in lieu of rubber, in the manufacture of caulking compounds, as stated in attached affidavits." The protests were consolidated for trial. The record consists of a stipulation of facts between counsel for the parties and two exhibits, one being a bottle of "Refined Rapeseed Oil," the other a bottle of "Blown Rapeseed Oil."

The stipulation reads as follows:

* * * that as hereinafter described the oil in question was converted into the form of blown oil and in that condition was used in lieu of rubber in the manufacture of caulking compound, that a caulking compound is not a substitute for rubber and that the other ingredients of the caulking compound were not rubber, that the aforesaid conversion into blown oil was accomplished as follows: The imported oil was subjected to a blowing process under conditions of temperature and air input which are controlled automatically and are accompanied by repeated samplings by technicians, careful processing being required to prevent over-polymerization, undue viscosity, and acidity, and undesirable qualities other than those. This treatment of rapeseed oil alters its character in many respects of commercial and technical significance: Its composition is changed by the addition of oxygen; its viscosity is increased 100 times or more; its specific gravity from .93 to 1.1; its acidity roughly from 3 to 6; its titer or solid fix point from minus 10 to plus 10 degrees C.; its saponification value from 70 to 200; and its refractive index from 1.465 to 1.58; and its iodine value decreases from 95 to 70; and it becomes wax-like instead of fluid, darker in color, and inedible; that two bottles here were labeled respectively "Refined Rapeseed Oil," and "Blown Rapeseed Oil," may be admitted in evidence as illustrative exhibits A and B as representing respectively the rapeseed oil as imported, and the blown rapeseed oil as used in the manufacture of caulking compound as above stipulated; that the customs regulations pertaining to rapeseed oil used in the manufacture of rubber substitutes under Section 2491 (f) of the Internal Revenue Code were complied with by plaintiffs.

Appellants argue here, as below, that the above statute sets up two express conditions of exemption; namely, (1) "manufacture" of the rapeseed oil into something which (2) is a "rubber substitute" (or lubricant). Appellants contend that the imported oil met those two conditions by (1) being "converted"—that is "manufactured"—into a new and different article by being blown or oxidized and (2) in that form becoming a "rubber substitute" by being used "in lieu of rubber," as set out in the stipulation. Stated in other words, the alleged manufacturing process transformed the rapeseed oil *per se* into a rubber substitute.

Counsel for the Government did not concede that such a process amounted to a "manufacture" but argued that even under such an assumption the question was immaterial because blown rapeseed oil was not a recognized rubber substitute.

The Customs Court did not determine whether the described process was actually a manufacture but did hold that the record was insufficient to find that blown rapeseed oil was in fact a rubber substitute.

The court, accordingly, overruled appellants' protests and denied a petition for rehearing. From that judgment this appeal was taken.

The sole question presented here is whether the agreed facts in the stipulation are sufficient to bring the imported oil within the provisions of section 2491 (f), *supra*.

In resolving that question we are giving the stipulation full weight, *Pacific Trading Co.* v. *United States*, 19 C. C. P. A. (Customs) 361, T. D. 45508, and applying the usual and ordinary meaning to the language used in said stipulation and in the controlling statute. *Old Colony Railroad Co.* v. *Commissioner of Internal Revenue*, 284 U. S. 552, 560.

It is to be noted that the statute specifically provides that the tax "* * * shall not apply to rapeseed oil imported to be used in the manufacture of rubber substitutes * * *."

As hereinbefore noted, while the Customs Court did not pass upon the question of whether the process referred to actually amounted to a "manufacture" within the meaning of the statute, it did hold that the stipulation was insufficient to justify a finding that blown rapeseed oil was in fact a "rubber substitute." In view of our disposition of this appeal, it is not necessary for us to discuss the first point.

In its decision, the Customs Court discussed at some length the respective meanings of the words "substitute" and "in lieu of," citing with approval the following excerpt from the case of *Bulova Watch Co.* v. *United States*, 21 C. C. P. A. (Customs) 156, T. D. 46494:

The word "substitute" has a very general meaning and its particular meaning in a given relation can not be determined alone from its general meaning. To illustrate, in one sense of the word, mineral water is a substitute for beer in that both beverages are used to quench thirst, but it would hardly be said that if, in addition to a tariff duty on beer, there should be a provision in the tariff act that the word "beer" should include "substitutes for beer," mineral water would be dutiable at the same rate as beer.

The court then observed that in the instant case the mere fact, standing alone, that blown rapeseed oil was used in lieu of rubber in the manufacture of a caulking compound did not, of itself, establish that it was in fact a rubber substitute, observing further that the record was silent as to the characteristics of blown rapeseed oil which might make it suitable or adaptable for use as a substitute for rubber.

We are in agreement with the Customs Court that the record is insufficient to justify the conclusion that the involved oil should be exempt from the tax in question.

It is, of course, well settled law that the presumption of correctness attaching to the collector's classification is based upon the premise that the collector has found every fact to exist that is necessary to sustain his classification, *United States* v. *Marshall Field & Co.*, 17 C. C. P. A. (Customs) 1, T. D. 43309, and that the importer must

assume a two-fold burden of proving not only that the classification made by the collector is erroneous but he must also show affirmatively that his own claimed classification is correct. *H. J. Baker & Bro.* v. *United States,* 37 C. C. P. A. (Customs) 52, C. A. D. 419.

It is to be noted that the imported oil is converted into "Blown Rapeseed Oil" by the process set out in the stipulation. There is no fact set out therein that the blown rapeseed oil is anything other than the refined rapeseed oil except that by the blowing and heating thereof its viscosity, specific gravity, acidity, solid fix, saponification, and refractive index are increased while its iodine value is decreased. It is not shown that such change alters the essential character of the imported goods. While it is set out in the stipulation that "This treatment of rapeseed oil alters its character in many respects of commercial and technical significance," it is not set out that such changes make of the blown oil a substance that possesses the characteristics of a rubber substitute. Neither is it shown that the refined oil could not be employed for the same purpose for which the blown oil was used.

The words "substitute" and "lieu" are defined in Webster's New International Dictionary, Second Edition, as follows:

substitute. A person or thing put in place of another; * * *
lieu. Place, room, stead:—used chiefly in the phrase *in lieu*, that is, instead of * * *

One might, if so desired, use lead instead of gold in casting a statue but it could not be contended that lead is used as a substitute for gold. A rubber heel on a shoe does not make such a heel a substitute for leather. The lead is used in lieu of gold and the rubber heel in lieu of a leather one. Similarly here, the blown rapeseed oil is used in lieu of rubber but not as a substitute therefor.

While it is true that in a general sense the phrases "in lieu of" and "substitute for" might in some instances be synonymous, we do not believe, under the facts of this case, that in the statutory or tariff sense they are so synonymous as to uphold the contentions of appellants.

If, in the face of the above stated two-fold burden of proof which rests upon the importer and which is a settled principle of customs litigation, he chooses to rest his case upon an incomplete stipulation of the essential facts, as we believe was done here, then he must necessarily accept the risks attendant upon such procedure. Perhaps the oil in question really does meet the requirements of the statute; if so, it seems to us that appellants could have easily introduced evidence of a clearer, more complete, and more convincing nature to establish such fact. But since appellants did not, in our opinion, do so, we find ourselves in agreement with the Customs Court that the

record is insufficient to justify the conclusion that the involved oil should be exempt from the tax in question.

While the arguments and authorities cited by counsel for appellants are persuasive, they are not, in our opinion, sufficiently convincing to justify our disturbing the judgment of the Customs Court.

Counsel for appellants, in their petition for rehearing, were unquestionably correct in stating that in one instance in the original opinion we gave an incomplete quotation of the agreed statement of facts. We have in this opinion corrected that omission but can see no reason to change our former conclusion.

For the reasons heretofore stated, we feel the judgment of the Customs Court should be, and it is hereby, *affirmed*.

WILLIAM P. COLE, JR., Judge, having participated below, disqualified himself to sit in this case and JACKSON, Judge, retired, was recalled to participate herein.