UNITED STATES of America,
Appellant,

v.

PUBLIC SERVICE COMPANY OF
OKLAHOMA, Appellee.

No. 5388.

United States Court of Appeals
Tenth Circuit.

Jan. 21, 1957.

Davis W. Morton, Jr., Washington, D. C. (Charles K. Rice, Robert N. Anderson and Hilbert P. Zarky, Washington, D. C., on the brief), for appellant.

Roger S. Randolph, Tulsa, Okl. (T. M. Markley, John M. Winters, Jr., Tulsa, Okl., and Ralph D. Stevenson, Chicago, Ill., on the brief), for appellee.

Before PHILLIPS, MURRAH and LEWIS, Circuit Judges.

MURRAH, Circuit Judge.

With respect to the computation of excess profits tax, Section 711(a) (1) (C) of the Internal Revenue Code of 1939, 26 U.S.C.A. Excess Profits Taxes, provided in presently material part that " * * * There shall be excluded, in the case of any taxpayer, income derived from the retirement or discharge by the taxpayer of any bond, * * * including, in case the issuance was at a premium, the amount includible in income for such year solely because of such retirement or discharge." The sole question on this appeal is whether the unamortized premium income on bonds, issued by the appellee-taxpayer in 1941 and retired in 1945, is excludible for purposes of excess profits tax in the taxable year 1945 within the meaning of the foregoing statute. The trial court held with the taxpayer and the Government has appealed.

The basic facts are not in dispute. In 1941, the taxpayer issued and sold at a premium its 30-year first mortgage bonds. And, pursuant to Section 29.22 (a)–17(2) (a) of Treasury Regulations 111, it was amortizing the premium income over the life of the bonds when they were retired in 1945. In computing its normal corporate tax for that year, the taxpayer deducted from gross income the redemption premium, redemption expenses, and unamortized issuance expenses, and subtracted therefrom the unamortized issuance premium. The allowable redemption expense having exceeded the unamortized issuance premium income, the taxpayer realized no income from the bond transaction for normal tax purposes. In the separate computation for excess profits tax for the taxable year 1945, the taxpayer excluded from excess profits net income the unamortized issuance premium as "ex-

cludible income" for such year "solely because of such retirement". A resulting unused, excess profits credit was carried back to preceding years, but upon a claim for refund for 1944 excess profits taxes, the Commissioner disallowed the exclusion of the unamortized issuance premium and reduced the credit carry-back accordingly.

From the legislative history of Section 711(a) (1) (C), 711(b) (1) (C) and 711(b) (1) (D) of the 1939 Code, the trial court concluded that it was the intent of Congress to "authorize the exclusion in the case of bonds issued at a premium the portion of the premium remaining unamortized at the retirement of the bonds and to allow the taxpayer to retain the deduction allowable under Section 23(a) for the expenses of such retirement in computing excess net profits income for the taxable year."

The Government, however, construes Section 711(a) (1) (C) to mean that excludibility of issuance premium income for excess profits tax purposes depends on the net effect incomewise of the whole bond transaction in the taxable year. That is to say, if the unamortized issuance premium income in the year of retirement when netted against the retirement premium and redemption costs results in normal taxable gain or income, such income is excludible in the computation of the excess profits taxes; otherwise, it is not. In no other way, says the Government, can the words "income derived from the retirement * * * of any bond" be given a rational meaning tax-wise. This construction is said to be supported by legislative history; the rationale of Treasury Regulations 111, § 29.22(a)–17(2) (a); and by Warner Co. v. Commissioner of Internal Revenue, 11 T.C. 419, affirmed per curiam, 3 Cir., 181 F.2d 599.

For purposes of statutory analysis, the taxpayer divides Section 711(a) (1) (C) into two operative parts. The first or general part is said to exclude "income derived from the retirement * * * of any bond", such as when the bonds are repurchased at less than the issuance price, resulting in a net gain to the taxpayer. The latter or special part is said to exclude issuance premium income which is "includible in income for such year solely because of such retirement." The taxpayer says this interpretation of the Section is in consonance with the plain language of the statute, the legislative history, contemporary writings, and the decision of the Court of Claims in Connecticut Railway & Lighting Co. v. United States, 142 F. Supp. 907. Given this construction, the answer to our question becomes palpably plain, for the taxpayer undoubtedly realized $202,458.16 net unamortized issuance premium solely because of the retirement of the bonds in the taxable year 1945. See Old Colony Railroad Co. v. Commissioner of Internal Revenue, 284 U. S. 552, 52 S.Ct. 211, 76 L.Ed. 484; Treasury Regulations 111, § 29.22(a)–17(2) (a).

As the legislation passed the House of Congress, it did not contain any express provision for the exclusion of premium income solely because of the retirement of the bonds. The Senate version, however, added language designed to effect that result. See Senate Report 2114, pp. 11–12, 76th Cong., 3rd Session; Cumulative Bulletin 1940–2, p. 537; Seidman's Legislative History of Excess Profits Tax Laws, 1946–1917, pp. 24–25. The conference report on the legislation contained the words "including, in case the issuance was at a premium, the amount includible in income for such year solely because of such retirement or discharge." And, with respect thereto, the Conference Committee report stated that "the adjustment on account of income derived from the retirement or discharge of bonds, etc., was rewritten to make certain that amounts which would be otherwise includible upon such retirement or discharge on account of any premium received upon issuance should be left out of the computation * * *." See House Rep. 3002, pp. 44–46, 76th Cong., 3rd Session; Cumulative Bulletin 1940–2, pp. 551–552; Seidman's Legislative History of Excess Profits Tax Laws,

1946–1917, p. 25. The final draft of corresponding Section 711(b) (1) (C) with respect to the retirement of bonds during base period years contained identical language as Section 711(a) (1) (C). Section 711(b) (1) (D), disallowing deductions under Section 23(a) for the base period years, was retained in the final draft; but original Section 711(a) (1) (D), disallowing deductions for taxable years, was eliminated. So that, redemption premiums and expenses were deductible for the appellee's taxable year 1945.

Apparently without dissent, contemporary writers and commentators have construed this legislation as requiring the exclusion of the unamortized issuance premium in the computation of excess profits tax. See "Cancellation of Indebtedness and Its Tax Consequences", 41 Col.L.Rev. 61, at pp. 82–83; "Mobilization for Defense", 50 Yale L.J. 250, at p. 289. After repeal in 1945, the Section was reenacted in 1950 without change (see 26 U.S.C.A. Excess Profits Taxes, § 433(a) (1) (D) of Internal Revenue Code of 1950) and has since received a similar construction. See Mertens Law of Federal Income Taxation, Vol. 7A, § 42.43, at p. 168.

Referring to the issuance premium income as one of the "unusual sort of gains resulting from the redemption of bonds" not coming within the reason of the excess profits law, the Court of Claims in the Connecticut Railway and Lighting Company case, supra, while not free from doubt, accepted the taxpayer's construction of the Section, saying " * * * such gains, though for income tax purposes they would be taxable, or would reduce loss deductions, should not be counted at all for excess profits tax purposes, either as taxable gains, or as offsets against deductible losses." See p. 910.

We are not quite sure of the rational impact of the Warner case, supra, on our problem. That case involved the deductibility of unamortized issuance debt and expenses in the computation of excess profits taxes. There was no question of the deductibility of the unamortized issuance debt or expenses for normal tax purposes under Treasury Regulations 111, § 29.22(a)–17(3) (a). And, in determining excess profits net income based on normal tax income, the court considered whether income from retirement of the bonds was excludible under Section 711(a)(2)(E), identical to our Section 711(a) (1) (C). The court concluded that "the amount to be so excluded in determining excess profits net income is the same amount which is included in gross income for the purpose of determining normal tax net income." From that premise, the court reasoned that "since the amount of unamortized discount is reflected in determining the net gain or income by reducing that figure for normal tax purposes, no further adjustment is necessary or proper in computing excess profits net income." Only income includible for normal tax purposes was therefore excludible for excess profits tax purposes. In other words, the court held that the issuance debt and expenses were deductible for normal income tax purposes and they were also deductible to reduce excludible income for excess profits taxes. As we analyze the court's reasoning it did embrace the net effect theory in determining excess profits tax liability, and we have no quarrel with either the reasoning or conclusion of that case under the facts presented. But as applied to our case, it proves too much.

Insofar as the reasoning in the Warner case would lead us to hold that excludibility of unamortized issuance premium income under Section 711(a) (1) (C) depends upon whether the taxpayer realized a net gain from the bond transaction, we must respectfully disagree. For we are convinced that a rational interpretation of the Section in the light of the Congressional history requires us to hold that unamortized premium income realized in the taxable year solely because of the retirement of the bonds is excludible for excess profits taxes, even though the bond transacation resulted in no gain to the taxpayer.

The judgment is therefore affirmed.