## WHITE HOUSE SIGHTSEEING CORPORATION
### v.
### The UNITED STATES.
### No. 445–59.

United States Court of Claims.
March 7, 1962.
Rehearing Denied June 6, 1962.

Arthur K. Mason, New York City, for plaintiff. Chapman, Walsh & O'Connell, New York City, Wolf & Wolf and J. Ninian Beall, Washington, D. C., were on the briefs.

John F. Palmer, Washington, D. C., with whom was Asst. Atty. Gen., Louis F. Oberdorfer for defendant. Lyle M. Turner and Philip R. Miller, Washington, D. C., were on the brief.

DURFEE, Judge.

This is a suit for refund of $4,206.96 paid by plaintiff to defendant after assessment by the District Director of Internal Revenue as a penalty under 26 U. S.C. (I.R.C.1954) § 6672 (1958 ed.) because of plaintiff's failure to collect and pay transportation taxes as required pursuant to 26 U.S.C. (I.R.C.1954) §

4261 (1958 ed.) during the period October 1, 1957 to June 30, 1958.

Plaintiff operates a sightseeing bus service over nine routes in the area of Washington, D. C. The charge to each passenger for each trip was based upon transportation costs and nontransportation costs, the latter being largely incidental to scheduled stops at points of interest for sightseeing.

Section 42.4261-2(d) of Treasury Regulations on Excise Taxes (1954 Code) was promulgated pursuant to authorization given the Secretary of the Treasury under section 7805, 26 U.S.C. (1958 ed.) and is entitled "Rate and Application of Tax."

It provides:

"(d) Where a payment covers charges for nontransportation services as well as for transportation of a person, such as charges for meals, hotel accommodations, etc., the charges for the nontransportation services may be excluded in computing the tax payable with respect to such payment, provided such charges are separable and are shown in the exact amounts thereof in the records pertaining to the transportation charge. If the charges for nontransportation services are not separable from the charge for transportation of the person, the tax must be computed upon the full amount of the payment."

Plaintiff does not challenge the validity of this regulation, but contends that its own records adequately allocated total revenues between transportation and nontransportation charges. Plaintiff also contends that the total charge to the passenger correctly included its charge for transportation as a separable item from its charge for nontransportation services. Plaintiff avers that its correct transportation charge for computation of the tax was established by its tariffs filed with the Interstate Commerce Commission.

In a similar case, Puig v. Tomlinson, 143 F.Supp. 659 (S.D.Fla.1956), the district court stated the issue as follows. at page 660:

"(1) * * * The sole issue to be determined by the Court is whether a transportation tax, which was paid for the full amount of an all-expense trip ticket, may be refunded to the extent of the tax paid for the nontransportation charges as determined by the books and records of the transporting company, which books and records did not reflect the nontransportation charges and transportation charges for each ticket in the exact amounts when the transportation tax was initially paid, but which books and records were sufficiently complete to yield the exact charges for transportation and nontransportation services by a simple mathematical computation."

The plaintiff, White House Sightseeing Corporation, submits that in the words of Puig, supra, it has separated its charges for transportation and nontransportation on its records by "a simple mathematical computation." However, the court in Puig, supra, did not specify how this computation was made.

In the present case plaintiff, in computing transportation charges for entry on its books for tax purposes, simply entered the exact amount set forth in its tariffs on file and in effect with the Interstate Commerce Commission. This was solely for the transportation charge per passenger over each of its nine sightseeing trips in Washington and its vicinity, as distinguished from nontransportation charges for sightseeing. These transportation fares were allocated at a charge of five cents per passenger mile for each of the nine sightseeing trips. Plaintiff's president testified at the trial that the company's bare costs of transportation, if there were no other services involved, "came out to something under five cents a mile," but did not present any breakdown or analysis of this figure. The company also determined that other transit bus companies in the area were charging two to four cents a

passenger mile for "pure transportation" on "direct transportation routes," as distinguished from sightseeing bus transportation. However, we are not convinced that the extrapolation of these other cost factors produces a realistic or reasonable basis upon which plaintiff could conclude that its own costs for "pure transportation" on "direct transportation routes" should be five cents a passenger mile.

We can assume that the transit tariffs of the other companies used by plaintiff for comparison were arrived at realistically for bare transportation charges, based upon their costs of two to four cents a passenger mile. Plaintiff did not have to be concerned that its tariff was equally realistic or accurate as a basis of separating pure transportation costs from other sightseeing bus costs. Plaintiff's figure of five cents per passenger mile used in computing its Interstate Commerce Commission trip tariffs was arbitrarily arrived at, for as its president testified, "it would never be questioned if it was higher than everyone elses. That is the reason we did it." Obviously, plaintiff was not so much concerned that the Interstate Commerce Commission would find its tariff too high as it was concerned that the taxing authorities would find that its tariff was too low. Certainly, regular transit company costs per passenger mile as a factor in direct transportation fares are not arrived at in this fashion.

■ Plaintiff's tariffs were filed with the Interstate Commerce Commission, and in the absence of objection or investigation, became effective. However, we are not foreclosed by this tacit acceptance of the tariffs by the Interstate Commerce Commission, from looking into its reasonableness as a factor in the computation of transportation taxes. Old Colony Railroad Co. v. Commissioner of Internal Revenue, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484 (1932); Pennsylvania Electric Company v. United States, 135 F.Supp. 416, 133 Ct.Cl. 314, 318 (1955).

We consider that the use of regular transit company tariffs as a basis for comparison by plaintiff in computing its own direct transportation charges for sightseeing bus operations is not realistic or meaningful because of substantial differences between the two types of operations.

Plaintiff's business is seasonal in nature, and while there is no precise evidence as to how much this factor affects its overall costs of operation, it obviously must result in higher operating costs to plaintiff than the transit companies whose regular yearly operations are not so substantially affected by seasonal variations.

Plaintiff has additional "pure" transportation costs because its buses remain idle while its customers tour points of interest on foot. For plaintiff's nine sightseeing routes, the average actual driving time ranged from one-third to one-tenth of the average total elapsed time for the trip. Certainly, no regular transit company could operate on charges of two to four cents a passenger mile if its major capital investment in buses was idle from two-thirds to nine-tenths of the actual time en route. There is also a substantial added cost allocable to transportation arising from the bus driver's idle time at sightseeing stops, at least where he did not accompany the passengers off the bus as a sightseeing guide or lecturer.

These substantial added and distinct costs of operation for this company were not considered by it as any basis for differentiation in comparing its transportation charges with those of other transit companies for "pure" or direct bus transportation. This is because plaintiff considered standby waiting time for buses and drivers, both idle while passengers were sightseeing off the bus as not allocable transportation expense and thus did not include them in its tariff for transportation charges. Rather, they were included in its nontaxable, nontransportation charges for sightseeing off the bus.

We do not accept this conclusion. The passengers chose plaintiff's bus service and paid its charges as a form of bus

transportation from place to place in preference to direct bus transportation, in large part because they had the added privilege of getting off the bus to view points of interest en route, and upon their return the bus and driver were waiting and ready to continue the trip. This added standby waiting cost to plaintiff is certainly an essential part of its cost of transportation. Since it was excluded from plaintiff's transportation cost per passenger mile, such cost could not be compared or equated with costs of other transit companies on direct trips between terminal points on the mere assumption that because plaintiff's figure was higher than the others, "it would never be questioned." Nevertheless, it was questioned by the Interstate Commerce Commission and the Internal Revenue Service, both of which wrote and advised plaintiff that its tariff and records did not comply with the statutes and regulations. Plaintiff, however, chose to abide by its own interpretation of the law.

We therefore determine that plaintiff, by arbitrarily computing and allocating its transportation charges, has failed to separate such charges from its nontransportation charges as required by section 42.4261–2(d) of the Treasury Regulations. Certainly, the requirements of the statute as construed by the regulation cannot be circumvented by an arbitrary computation when that computation is without real basis in fact.

In the computation of the added tax by the Internal Revenue Service, plaintiff was allowed to exclude from gross income such nontransportation charges as admissions, fees, boat fares, lunches, customer refunds, exempt transportation, charter limousine service not on an "established line" and customer parking expense where facilities of plaintiff were not in use, even though these charges were not "shown in the exact amounts thereof in the records pertaining to the transportation charge." These excludable charges could only be ascertained from plaintiff's canceled checks and not from its books or tax records.

The ten percent tax was assessed upon the full amount of the remaining total charges made by plaintiff for all of its services, after deduction of the nontransportation charges designated above, as determined by the canceled checks.

We conclude that the penalty was correctly assessed and collected. Plaintiff's claim for refund is denied and plaintiff's petition will be dismissed.

It is so ordered.

REED, Justice (Retired), sitting by designation, and LARAMORE and WHITAKER, Judges, concur.

JONES, Chief Judge (concurring).

I join, with reluctance, in the conclusion reached by the majority. I have no doubt that a considerable part, if not the major portion, of plaintiff's collections were for nontransportation fees and services. The limited distances traveled in relation to the time consumed in each of the various towns make that conclusion manifest.

Between the filing date and the effective date of the tariff, the Interstate Commerce Commission, in a letter from the Assistant Director of its traffic bureau, advised plaintiff of the necessity to show in the filed tariff schedule the charge for the "guides, lecturers and perhaps other services" as well as the charge for transportation, and asked plaintiff to advise whether it would comply promptly with these requirements as set out in section 217(a) of the Interstate Commerce Act, 49 U.S.C.A. § 317(a).

It would have seemed wise for plaintiff to have gotten in touch with a representative of the Commission, worked out a reasonable and satisfactory formula and used that as a pattern. But instead, the plaintiff chose not to file a list of its nontransportation charges but 5 months after the effective date of the tariff schedules its attorney sent the Commission a letter defending the schedules already filed. Plaintiff thus stood pat on its own method of handling, regardless of

the viewpoint of the Commission which is experienced in such matters.

While this writer feels that at least half of the charges made were probably for nontransportation services, we have been given no sufficient facts on which to make a satisfactory calculation and, of course, we are not permitted to enter the field of guesswork.

WHITAKER, Judge, while concurring in the majority opinion, also concurs in the above concurring opinion by JONES, Chief Judge.