**MARSH MONUMENT COMPANY, Inc.,**
a Michigan corporation, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

Civ. A. No. 29462.

United States District Court
E. D. Michigan, S. D.

Feb. 18, 1969.

Judgment April 16, 1969.

Wallace Green and Robert L. Heritier, of Schmidt & Heritier, Detroit, Mich., for plaintiff.

Daniel P. Mullarkey, Tax Div., Dept. of Justice, Washington, D. C., Robert J. Grace, U. S. Dist. Atty., Detroit, Mich., for defendant.

## FINDINGS OF FACT

MACHROWICZ, District Judge.

1. The Plaintiff, Marsh Monument Company, Inc., is a corporation incorpo-

rated under the laws of the State of Michigan, having its principal place of business in the City of Vernon, Michigan, and within the Eastern Judicial District of Michigan.

2. The Plaintiff timely filed its corporate tax returns for the fiscal years ending June 30, 1960, through June 30, 1964, and timely paid the taxes reported thereon as being due.

3. The Plaintiff's income tax returns for the fiscal years ending June 30, 1960, through June 30, 1964, were examined by the Internal Revenue Service. As a result of this examination, an adjustment was made to Plaintiff's taxable income for each of the years resulting in a deficiency assessment on July 10, 1964 of $4,937.91 plus interest of $1,091.21 for the fiscal year ending June 30, 1960; $7,065.91 plus interest of $1,137.51 for the fiscal year ending June 30, 1961 and $15,779.18 plus interest of $1,593.48 for the fiscal year ending June 30, 1962, as well as a deficiency assessment on March 3, 1965 of $6,637.55 plus interest of $562.64 for the fiscal year ending June 30, 1963 and $4,463.63 plus interest of $115.26 for the fiscal year ending June 30, 1964.

4. The deficiency assessments with respect to the fiscal years ending June 30, 1960, through June 30, 1962 were paid on July 21, 1964, and the deficiency assessments for the fiscal years ending June 30, 1963 and June 30, 1964 were paid on March 17, 1965.

5. On October 28, 1964, claims for refund of a portion of the additional taxes assessed with respect to the fiscal years ending June 30, 1960, through June 30, 1962, were filed and on June 13, 1966 claims for refund of a portion of the additional taxes assessed with respect to the fiscal years ending June 30, 1963 and June 30, 1964 were filed.

6. On May 13, 1966, the claims for refund with respect to additional taxes assessed for the fiscal years ending June 30, 1960, through June 30, 1962 were formally denied. On August 25, 1966, the plaintiff consented to a disallowance of the claim for refund of additional taxes assessed for the fiscal years ended June 30, 1963 and June 30, 1964.

7. The dispute between the plaintiff and the Internal Revenue Service arose out of the taxpayer's exclusion of certain amounts from income, as well as its claim that certain other amounts were deductible interest expenses. The factual setting out of which the dispute arose is as follows:

(a) The Genessee County Drain Commissioners issued "Drain Notices" soliciting bids to supply drain tile for county and municipal construction projects.

(b) Plaintiff submitted bids which were accepted, and the plaintiff entered into "Contracts for tile" with the Drain Commissioner to supply drain tile for county and municipal construction projects.

(c) Previous to 1956 the Drain Commissioner would satisfy his obligation under a contract for drain tile by issuing "drain orders", which were promises that the County Treasurer would pay for the tile on the day that the drain order was due. The drain orders bore interest of 6|% from the date of invoice to the date of payment.

(d) On May 25, 1956 the Attorney General of the State of Michigan ruled that under Michigan law, drain orders could not bear interest on their face, but would automatically, by statute, begin to accrue interest at 6|% from their due date till time of payment.

(e) After this ruling, plaintiff began to submit bids, and enter contracts with the Drain Commission in a manner somewhat different than before the ruling. Instead of presenting one total price, plaintiff's bids and contracts showed one amount as "basic price per foot", one amount as "Int. 6|% basis", and a "total", which was the sum of the base price and the interest figure.

(f) Under these contracts the total contract price would be divided by the number of years over which payment

was to be made, and a separate drain order was made out for each installment, a "one year drain" requiring only one drain order, a "two year drain" requiring two, etc.

(g) Plaintiff submitted separate bids for contracts which were to be paid off in one, two, or three years. Under the plaintiff's bid, the "total" amount was computed by adding to the "base price per foot" a percentage of that amount. The percentage was computed on the basis of 6% per year from the date of presenting the bid. If it was a "one year drain" the amount added to the "basic price per foot" was 6%; if it was a two-year drain the amount added was 12%, and if it was a three year drain the amount added was 18%.

(h) After 1956 the Drain Commissioner satisfied these contract obligations, just as before, by issuing drain orders payable by the County Treasurer. They were able to be sold at discount, and there was a market for the purchase and sale of these obligations.

(i) The plaintiff excluded from its income, as reported on its corporate income tax returns, that portion of the face amount of the drain orders attributable to the amount designated "Int. 6% basis" in the contracts for tile.

(j) On its corporate income tax returns for the years 1960 through 1964 the plaintiff claimed interest expense deductions as follows:

| | |
|---|---|
| 1960 | $12,953.54 |
| 1961 | 13,781.33 |
| 1962 | 13,991.10 |
| 1963 | 13,741.75 |
| 1964 | 13,131.59 |
| | $67, 599.31 |

The claimed interest expense deductions represented the entire cost of interest on all indebtedness incurred or continued during the years 1960 through 1964. Of this amount, $31,-856.12 was paid as interest on a long-term loan in the amount of $211,782.03 by the Small Business Administration, which plaintiff secured in the fiscal year ending June 30, 1961.

## CONCLUSIONS OF LAW

### I. EXCLUSIONS FROM INCOME UNDER IRC § 103(a)

██ Section 103(a) of the Internal Revenue Code of 1954 provides as follows:

"Gross income does not include interest on—(1) the obligations of a State * * * or any political subdivision of any of the foregoing."

This section has been interpreted a number of times, and it is now clear that Congress did not intend to limit the exemption for interest on obligations of state subdivisions to the interest on some particular form of obligation. Commissioner of Internal Revenue v. Meyer, 104 F.2d 155 (2d Cir. 1939). A written agreement of purchase and sale in which a political subdivision agrees to pay interest will still qualify as an "obligation" under the statute. Kings County Development v. Commissioner, 37–2 T.C. Par. 9585; Fairbanks, Morse & Co., v. Collector of Internal Revenue. 46–1 T.C. Par. 9145; Rev.Rule 60–179. In *Kings County*, the Court said,

"To place an interpretation on the word "obligation" so as to exclude such ordinary written contracts is too narrow to be either practical, just, or within the ordinary meaning of the words of the statute, and is inhibited by the Constitution of the United States."

The fact that interest was paid pursuant to a contract of sale, therefore, and not under a bond or other type of investment security would not prejudice plaintiff's right to exclude such sums from income.

Having seen that the nature of the "obligation" as a contract of sale does not preclude exclusion, the crucial inquiry then becomes whether or not the plaintiff received "interest", irrespective of its nature as tax-exempt or not. Al-

though plaintiff added 6% per year to its basic price of tile, for the privilege of paying for the tile at a later date, the drain orders, given to satisfy the contracted obligation, did not provide for interest on their face, and in fact could not under Michigan law. It is defendant's contention that since the drain orders were issued only for their face amount, plaintiff did not receive interest when the drain order was paid.

The Tax Court of the United States was presented with a situation similar to this in the case of Newlin Machinery Corp. v. Commissioner, 28 T.C. 837 (1957). In that case the taxpayer was a conditional vendor of machinery to a municipality. The conditional sales contract purchase order provided for installment payments designated as "rent", and contained a stipulation that any notes received in satisfaction of the obligation would bear interest at 6|%. The "lease agreements" which evidenced the periodic payments, and the rent invoices, did not contain any notations that any portion of the amount paid was for interest. In holding that amounts paid under some of the invoices were exempt while others were not, the Tax Court emphasized the terms of the original purchase orders. Those payments which were paid pursuant to a written purchase order which provided that part of each payment was to be for interest were tax exempt to the extent that they represented the payment of such interest. They were exempt even though neither the lease agreement, the rental invoices nor the notes received in payment stipulated that part of the payment was for interest. Where there was no purchase order, none of the income from payments was exempt.

■ In this case, each Marsh Monument bid and contract provided that a portion of the payment was for interest at 6%. Both Marsh Monument and the

County Drain Commissioner understood that this additional 6|% per year was a charge for delaying payment. The fact that the drain orders, the negotiable instruments used to satisfy the contractual obligation, did not bear interest on their face, should not prejudice this plaintiff more than the taxpayer in *Newlin* who did not provide for interest in the lease agreements or notes made pursuant to the purchase orders in that case. Since plaintiff here provided for interest in the "contracts for tile", and the parties understood that the extra charge was for interest, the fact that a provision for interest was not on the face of the drain order is immaterial to the nature of the deduction as interest.

■ Defendant's argument, that the Drain Commissioner could have paid off the drain orders immediately and still would have to pay the full invoice price, is not germane. The 6% charge was the price for the *right* to defer payment for one year, and as such was a premium paid for forbearance from collecting an obligation, commonly known as "interest".[1] And as defendant correctly points out, the United States Supreme Court has said that the term "interest" must be presumed to have been used by the legislature in its usual, ordinary and everyday meaning. Old Colony R. Co. v. Commissioner of Internal Revenue, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484 (1932).

■ This Court therefore concludes that the amounts which the plaintiff excluded from income relying on IRC 103 (a) were properly excluded. These amounts were "interest" as that term has been defined in relation to the taxing statutes. The amounts constituted interest received on "obligations", as that term has been defined by courts and in Revenue Rulings, and it is undisputed that they were paid by a political subdivision of a state.

---

1. Webster's New International Dictionary, 2nd ed., 1934, defines interest as follows: "3 * * * a rate per cent of money paid for the use of money or the forbearance of demanding payment of a debt".

## II. LIMITATIONS ON DEDUCTIBILITY OF INTEREST EXPENSE UNDER IRC § 265(2)

Section 265(2) of the Internal Revenue Code of 1954 provides as follows:

> "No deduction shall be allowed for * * * (2) *Interest*—Interest on indebtedness incurred or continued to purchase or carry obligations * * the interest on which is wholly exempt from taxes imposed by this subtitle."

Defendant argues that, even granting that plaintiff has properly excluded interest received pursuant to the "contracts for tile", IRC § 265(2) operates to disallow certain deductions which the taxpayer took as interest expense. Defendant argues that interest paid by the plaintiff was for the purpose of "carrying obligations the interest on which is wholly exempt from taxes."

The "forbidden purpose" test of § 265 (2) is a legal standard which has been recognized to be difficult to define, but courts have attempted to describe the test in somewhat more concrete form. Thus, in Illinois Terminal Railroad Co. v. United States, 375 F.2d 1016, 179 Ct. Cl. 674, the court said, that although there were good business reasons for holding the bonds the *dominant reason* for continuing the debt was the railroad's concern for preserving its bond-holdings, which could be accomplished only if the debt financed its operations. Discussing how to determine what was the taxpayer's dominant reason, the court said,

> "Of course, the resolution of this issue requires a connection-type inquiry, which will be somewhat different from the inquiry into situations where the issue is whether indebtedness was incurred to *purchase* tax-exempt bonds. It is necessary to establish a *sufficiently direct relationship* to the continuance of the debt for the purpose of carrying the tax-exempt bonds."

In Wisconsin Cheeseman, Inc. v. United States, 7 Cir., 388 F.2d 420, the Tax Court reaffirmed the "sufficiently direct relationship" test, but also said that a deduction should not be allowed if the taxpayer could reasonably have foreseen at the time of purchasing the tax exempts that the loan would probably be required to meet future economic needs of an ordinary recurrent variety. The court in *Cheeseman* also noted that the taxpayer could have sold the bonds he held to meet its temporary business needs. In a recent case, Leslie v. Commissioner, 50 T.C. No. 11 (Apr. 2, 1968) the Tax Court reviewed those cases where the taxpayer had a choice of selling tax-exempts or borrowing, but allowed the deduction in that case, stating:

> "On the other hand, when the taxpayer had *no choice*—no opportunity to avoid the borrowing by liquidating the tax exempts, the court found that the purpose for incurring the indebtedness was not to hold tax-exempts."

In *Leslie* the court allowed the deduction because the evidence in that case indicated that there was no relationship between the amounts borrowed and the amount of tax-exempts purchased. The court also found that there was no forbidden purpose because when the daily decision was made as to whether the taxpayer would borrow more or repay some of its loans, no one consciously considered that by selling off all of its tax-exempts, the taxpayer could reduce the amount which had to be borrowed.

Having noted the ways in which various courts have attempted to define the dimensions of the "forbidden purpose" test of § 265(2), it now remains to inquire whether or not plaintiff had such a forbidden purpose. Perhaps the first thing to note is that the taxpayer did not purchase these obligations for investment purposes but acquired drain orders as payment for work which was performed in the ordinary course of the taxpayer's business. Although taxpayer did acquire other drain orders on a few occasions, the evidence indicates that they were not purchased on the open market, but were taken from other contractors as settlement of debts owed by

other contractors; the evidence also shows that these other drain orders were acquired in this fashion infrequently. Another fact which would seem to inhibit the operation of § 265(2) is the fact that in order for the plaintiff to sell these drain orders, it would have to suffer a discount of approximately 10%, whereas it could borrow funds for 5%. This situation would seem to be close to the situation in *Leslie* where the court refused to apply § 265(2) when the taxpayer had no choice and no opportunity to avoid borrowing by liquidating the tax-exempts. Also like *Leslie* is the fact that when the taxpayer bid to supply drain tile for municipal construction projects, it is doubtful that the taxpayer consciously considered that by refusing to do work for municipal construction projects, it could insure the deductibility of interest paid. Moreover, the greatest part of plaintiff's outstanding debt was a long-term loan of approximately $212,000 from the Small Business Administration, in 1961, given for the purpose of expansion of plaintiff's business. Since the greatest portion of the interest paid was a result of the long term loan by the Small Business Administration in 1961, negotiated at a time when the plaintiff had no means of even knowing how many municipal construction projects it would bid on, or how many it would eventually contract for, the interest paid on that loan does not have a sufficiently direct relationship to tax-exempt interest received for the years following that loan. It does not appear that the dominant reason for securing the major portion of the loans was for the purpose of holding tax-exempt securities. The limitations of § 265(2) do not apply, therefore, since the taxpayer did not incur or continue its indebtedness for the purpose of carrying tax-exempt obligations.

Since the Court finds that interest paid by the taxpayer was not paid pursuant to a debt incurred for the purpose of purchasing or carrying tax-exempt obligations, and was therefore properly deductible, taxpayer's argument with regard to his reliance on private rulings from the Internal Revenue Service do not have to be considered.

### JUDGMENT

This cause having been tried to the Court without a jury, and the Court having considered the evidence, briefs and arguments of counsel, and having entered its findings of facts and conclusions of law on February 17, 1969, it is hereby

Ordered, Adjudged and Decreed that the plaintiff have judgment against the defendant for the principal amount of $16,469.60 with interest thereon at six percent according to law and its costs.