Wherry, J., concurring: I agree with the majority opinion but write separately to emphasize the limited factual record on which this case was decided. As noted in the majority opinion the word “home” in section 107 should, after application of section 7701(m), be read to mean home or homes. See Kislev Partners, L.P. ex rel. Bahar v. United States, 84 Fed. Cl. 385, 389 (2008). For many years courts have interpreted statutory provisions in accordance with their common meaning. “ ‘The legislature must be presumed to use words in their known and ordinary signification.’ * * * ‘The popular or received import of words furnishes the general rule for the interpretation of public laws.’” Old Colony R.R. Co. v. Commissioner, 284 U.S. 552, 560 (1932) (citations omitted). Consequently, I respectfully reject my dissenting colleagues’ view that “a home” is ambiguous and that two homes, which they acknowledge is not impossible, should not be permitted here because “‘exclusions from income must be narrowly construed.’ ” Dissenting op. p. 569. By design of the parties, this case was submitted for decision under Rule 122. The result, when combined with the parties’ briefs, is a very narrow question posited for our decision. That question is whether section 107(2) covers only one home or both homes. That question was effectively resolved when the parties stipulated that 6. The parsonage allowance paid by the Ministry covered the following properties: a. During all of the years at issue, a residence at 345 Davis Trail NW, Cleveland, Tennessee that constituted the principal residence of Mr. Dris-coll and his family. b. A second residence at the Parksville Lake Summer Home area of the Cherokee National Forest, Lake Oconee, near Cleveland, Tennessee. There were two properties owned during this period, one from January, 1996 through April, 1998, which was sold in April, 1998, and a second one from April, 1998, through December 31, 1999; and 8. Each of these properties was used solely as a personal residence and not for any commercial purposes. None of the properties was rented. Thus, the majority’s answer here is that it may cover more than one home.[1] Necessarily absent from our consideration of this case are important regulatory considerations which were not fully addressed in the stipulation or on brief. See section 1.107-1(a), Income Tax Regs., which specifies that “In order to qualify for the exclusion, the home or rental allowance must be provided as remuneration for services which are ordinarily the duties of a minister of the gospel. In general, the rules provided in § 1.1402(c)-5 will be applicable to such determination.” This consideration necessarily involves factual questions of why the remuneration was provided and whether it was reasonable compensation and may indirectly raise issues of private benefit and personal inurement, none of which were considered here. See Orange Cnty. Agric. Socy., Inc. v. Commissioner, 893 F.2d 529 (2d Cir. 1990), affg. T.C. Memo. 1988-380; W. Catholic Church v. Commissioner, 73 T.C. 196 (1979), affd. without published opinion 631 F.2d 736 (7th Cir. 1980); Church of Gospel Ministry, Inc. v. United States, 640 F. Supp. 96 (D.D.C. 1986), affd. without published opinion 830 F.2d 1188 (D.C. Cir. 1987). Thus, my vote in this case is predicated on its limited facts and the specific issue raised. Thornton and Holmes, JJ., agree with this concurring opinion. To persons living in densely populated areas this may seem anomalous. But in the sparsely populated rural West and Alaska, a minister of the gospel may serve a congregation covering a geographic area considerably larger than the State of Rhode Island. In such a situation, the minister may well need more than one home, particularly in mountainous areas with sometimes severe winter weather.